### FOREST JOHNSON v. STATE.

No. A-3660.    Opinion Filed Nov. 22, 1921.
(201 Pac. 1006.)

(Syllabus.)

1. **Rape—Evidence to Support Conviction in First Degree.** In a prosecution for rape, evidence held sufficient to support the verdict and judgment of conviction for rape in the first degree.

2. **Rape—Assisting Others to Perpetrate Crime.** Where the evidence shows, or tends to show, that the defendant was present aiding and assisting others in committing a rape by force and violence, overcoming the resistance of the female, a conviction will be sustained, even though he did not personally have intercourse with her.

3. **Appeal and Error—Discretion of Lower Court—Change of Venue.** A petition for a change of venue is addressed to the sound discretion of the trial court, and, unless it clearly appears that there is an abuse of such discretion, this court will not reverse the judgment for the failure of the trial court to grant a change of venue.

Appeal from District Court, Delaware County; A. C. Brewster, Judge.

Forest Johnson was convicted of rape, and he appeals. Affirmed.

Hunt & Beaucamp, John R. Leach, and James S. Davenport, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

DOYLE, P. J.   This appeal is from a judgment of conviction for rape in the first degree, the punishment having been assessed at imprisonment in the penitentiary for 20 years. The information charged that appellant, Forest Johnson, Dick Johnson, Raymond Scaggs, and Dan Scaggs, in Delaware county, on or about the 13th day of August, 1919, did unlawfully, feloniously, against the will of Lillie Hayes, and by force and violence, sufficient to overcome her resistance, have sexual intercourse with her, she, the said Lillie Hayes, not being the wife of either of said defendants.

A motion to quash and set aside the information was interposed and overruled, and a general demurrer was interposed and overruled; the defendants then filed a petition for change of venue, which was denied.   The defendants then asked and were granted a severance.   Upon appellant's separate trial the jury returned their verdict as above stated.

The errors assigned are substantially as follows:   That the court erred in overruling the motion to quash, and the demurrer to the information; that the court erred in refusing to grant a change of venue; that the verdict is contrary to law and the evidence; that the court erred in admitting incompetent and prejudicial evidence: that the court erred in giving certain instructions and in refusing to give two requested instructions and that the court erred in permitting improper remarks by the county attorney.   We will dispose of these assignments of error in the order startd.

The grounds of the motion to set aside the information are that—

"The original complaint was filed before S. R. Beck, justice of the peace in the town of Bernice; that on the defendant's application, and by agreement of the parties, the cause was transferred to S. C. Platt, justice of the peace in the town of Grove, and the defendants were held to answer as the

result of the preliminary examination before said justice. S. C. Platt; that the said S. R. Beck acted outside of the justice district for which he was appointed justice of the peace, and for this reason his acts were illegal and a nullity.''

In support of the motion to set aside, the county clerk testified:

"The incorporated town of Bernice is in township No. 5, which township is in justice district No. 4; that said S. R. Beck was appointed justice of the peace to fill a vacancy caused by the resignation of E. T. Tompkins, justice of the peace of the town of Bernice, and that S. R. Beck, at the time he was appointed, was a resident of the town of Bernice.''

It is apparent from the record that the motion to set aside does not state facts sufficient to set aside the information, and the proof offered does not support the grounds alleged in the motion. Upon the request of the defendants and by agreement of the parties the preliminary examination was held before S. C. Platt, the committing magistrate; this left nothing for the defendants to complain of. Upon the record before us the motion to set aside the information was properly overruled.

The sufficiency of the information is not questioned in appellant's brief, and we find that it is sufficient, and the demurrer thereto was properly overruled.

The ground set up in the application for change of venue was:

"That the minds of the inhabitants of Delaware county are so prejudiced against each of the defendants that a fair and impartial trial cannot be had in said county.''

The application was also supported by the affidavits of three other persons. The court overruled the application. It has been the uniform holding of this court that the granting or refusing of a change of venue is, under the statute, a matter

resting within the sound discretion of the trial court, and, unless it clearly appears there is an abuse of such discretion, this court will not reverse the judgment for a failure of the trial court to grant a change of venue. Browder v. State, 16 Okla. Cr. 43, 180 Pac. 571; Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341; Gentry v. State, 11 Okla. Cr. 355, 146 Pac. 719; Edwards v. State, 9 Okla. Cr. 306, 131 Pac. 956, 44 L. R. A. (N. S.) 701; Sayers v. State, 10 Okla. Cr. 234, 135 Pac. 1073; Tegeler v. State, 9 Okla. Cr. 138, 130 Pac. 1164; Turner v. State, 4 Okla. Cr. 164, 111 Pac. 988. Upon the record before us we are of the opinion that there was no error in refusing a change of venue.

The alleged rape was committed about midnight of the day alleged, at the home of prosecutrix in Delaware county, five miles south of Afton. The prosecutrix and her six children occupied a two-room house; the oldest girl 14 years old, the next a girl 12 years old, the next a boy 10 years old, the next a girl 8 years old, the next a boy 4 years old, and a baby boy 20 months old. She testified:

"I had been asleep. Some one hollered, 'Hello.' I raised up and asked what they wanted. Some one said they were looking for a man by the name of O'Conner, and thought he was there in the house. I said, 'There is no men folks here.' They went away from the door, and I got up and dressed, and with my daughter began to search for a knife I had there, or a piece of stove wood to protect ourselves. In 5 or 10 minutes they came back. They said they were lawyers. Dick Johnson had a little pistol. He pointed it at me, and told me to put the knife down. I laid it on the incubator. Then he called to the others and said, 'Come on; lets search the house.' Then he pointed the gun at us, and told us to throw up our hands; he was going to search all of us. As he said this he passed my little girl, who was standing near the door, and grabbed my arm and started on through the house. I tried to jerk loose from him, and held on to the door. He jerked me through

and kept dragging me on out towards the smokehouse. I began screaming, and he said he would shoot me if I hollered, but I kept on hollering. He took me around the smokehouse. Then he hit me with his fist and knocked me down. Then he said, 'Come on, boys, and hold her,' and the others came and held me fast on the ground while Dick Johnson ravished me. Then Dan Scaggs did the same thing. Then Forest Johnson ravished me, while I was begging, screaming, and fighting and doing all that was within my power to stop him. Then Raymond Scaggs started to perfom the same thing. No one was holding me then; I was worn out and couldn't hardly move, and I said Mr. Jarvis was coming, and they all disappeared. My head was all bruised, and my clothes were all torn. When I came to myself I gathered up my children, and we went to Mr. Jarvis' place and stayed there until the next morning. It was a bright moonlight night.''

Iva Smith, daughter of Lillie Hayes, testified:

''My age is 14. When the men came, I got up and put on my clothes. I know Forest Johnson; and he was there that night. Dick Johnson had a small pistol in his hand, and said he was going to search the house. Then he took hold of mamma's arm. When they came to the door, she told him she was not going any farther, and he jerked her into the kitchen. He told her to come on out; he wanted to ask her a question. She said she was not going, and he jerked her out into the yard. Forest Johnson and another man were in the kitchen; I heard mamma hollering, and said I was going out; he said I was not. A man outside told him to come on, it was his time next, and Forest Johnson went out. After a while mamma fell into the door. We picked up the children and went over to Mr. Jarvis' place.''

The testimony of Eva Smith was, in substance, the same as that of her sister, Iva.

As a witness in his own behalf appellant, Forest Johnson, testified:

''My age is 22 years. I have lived in Delaware county 12 years, except about 2 years that I was in the service. On the

night of August 13th, we went to a charivari at Mr. Reed's. Then we got in buggies and went to Mrs. Hayes. When we got there Raymond Scaggs and Dick Johnson went up to the house; Dan Scaggs and myself stayed back, and I don't know what they did or said to this lady. Dick talked to her, and they went around the house. Dan Scaggs and myself walked up and stood behind a brick chimney. Dick Johnson and this lady locked arms and walked towards the smokehouse; I stepped into the house where the children were and talked to them; I knew the two oldest girls. I did not have a gun. One of the children said, 'Where is Mamma'? I said, 'She is outside the house.' Another said, 'Are they going to hurt her?' and I said, 'No, they are not going to hurt her; she will be back in a few minutes.' Raymond Scaggs came to the door and said, 'Let's go; there is nothing doing;' and I walked out of the house, and we went away. I did not ravish Mrs. Lillie Hayes, and I was not out in the back yard with her, and I do not know what happened out behind the smokehouse.''

The testimony in the case is very voluminous, covering several hundred pages, but the foregoing excerpts suffice to show that the case was one for the consideration of the jury. The testimony on the part of the state, if credited, as it was, was amply sufficient to sustain the verdict.

Some exceptions were taken during the course of the trial to the admission of evidence bearing upon the issues in the case, but we are of the opinion that none of them were well taken.

No objection was made or exception taken to any of the instructions given by the court. Taken as a whole, the instructions correctly covered every phase of the case presented by the testimony.

During the argument of counsel for the prosecution, an assistant prosecutor made the remark, "These boys tell you that she walked out glibly, arm in arm with a stranger." Whereupon counsel for the defendant objected to the remark, and the court overruled the objection. The remarks of coun-

sel must be considered and construed in reference to the evidence, and, considering the testimony in the case, the remark was not objectionable.

We have given this case our careful consideration, and find no error justifying a reversal. The judgment is therefore affirmed.

MATSON and BESSEY, JJ., concur.