**Gary Keith PETERS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–652.**

Court of Criminal Appeals of Oklahoma.

Nov. 1, 1978.

Rene P. Henry, Jr., Hominy, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Carol Elaine Alaxander, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Gary Keith Peters, appellant, hereinafter referred to as defendant, was charged, tried before a jury in bifurcated proceedings and convicted of the crime of Robbery With a Firearm, After Former Conviction of a Felony, pursuant to 21 O.S.Supp.1973, § 801, and 21 O.S.Supp.1976, § 51, in the District Court, Osage County, Case No. CRF–76–605. Punishment was set at twenty (20) years' imprisonment in the State penitentiary. The trial court sentenced the appellant in accordance with the jury verdict, and he has perfected his appeal to this Court.

A summary of the testimony indicates that the victim, Donald Young, left his home at approximately 7:30 or 8:00 p. m. on October 9, 1976, to meet two friends in downtown Tulsa. He dressed casually and was wearing assorted jewelry valued at almost $10,000. Mr. Young recognized the defendant while driving in downtown Tulsa. Mr. Young and the defendant had become acquainted some four months earlier. Defendant followed Mr. Young to a parking lot where they engaged in light conversation. During this conversation, the defendant asked Mr. Young if he would like to go "riding around," to which Mr. Young agreed. It was decided that Mr. Young was to follow the defendant to defendant's parents' home so the defendant could park his car.

Donald Young followed the defendant into Osage County to a private drive in a deserted area. Defendant parked his car and then got into Young's car. The pair talked for a few minutes and when Young began to back out of the driveway the defendant pulled a gun from his jacket pocket and said, "I hate to do this." The defendant then demanded the victim's jewelry. Mr. Young gave the defendant all of his jewelry except for one diamond ring which he dropped to the floorboard. Upon leaving the scene of the robbery, Mr. Young went to the Tulsa Police Department who sent him to the Tulsa County Sheriff's Office and they called the Osage County Sheriff's Office. After making a statement to the Osage County Deputy Sheriff Bill Williams, Mr. Young directed the deputy to the site of the robbery.

On October 12, deputies from Osage County went to the apartment of Mrs. Nancy Alcorn in search of the defendant. Mrs. Alcorn told them that the defendant was not there while he hid in a bathroom. Later that same day, the deputies returned and Mrs. Alcorn told them that the defendant was there and allowed them to search her apartment. They found the defendant hiding in an upstairs closet under some clothes and found a pellet gun on the back of a shelf in a downstairs closet. This pellet gun was identified by the victim as having been the gun used in the robbery. Later testimony indicated that the gun belonged to Mrs. Alcorn's son who had possession of the gun at the time of the robbery and had hidden it from his mother. Shortly after the deputies left, Mrs. Alcorn found another gun, a .38, in a basket of wet clothes. Mrs. Alcorn offered further testimony that she did not allow guns in her house; that she found the gun after the defendant was arrested; that the gun had not been in her apartment before defendant came to the apartment; that no one besides herself, her husband, and her two children had been in the apartment during defendant's presence; and that no one claimed ownership of the gun.

After his arrest and while defendant was in jail, he asked to talk with Deputy Clifford Crabtree who was a childhood friend and who had participated in defendant's arrest. The defendant told Deputy Crabtree to tell the District Attorney that he would take a year in the County jail and would tell them where they could find the "stuff." The deputy told the defendant that he would relay his message to the District Attorney but that the defendant should not have made that statement since the deputy would possibly have to testify about the conversation. During closing argument, the prosecutor made reference to this statement made by the defendant to Deputy Crabtree. The prosecutor then stated that he gave the defendant the only deal that his oath allowed and which was required of him by law.

Introduction of testimony from the defendant about his prior criminal convictions was also permitted. On direct examination, the defendant admitted having pled guilty to a prior burglary charge. On cross-examination, he testified that he had two prior convictions of driving while intoxicated and convictions of grossly disturbing the peace, unlawful possession of marihuana, larceny of an automobile, and burglary in the second degree. During redirect examination, the defendant stated he had pled guilty to these prior charges because he was guilty and that he pled not guilty in this case because he was not guilty. On recross-examination, the defendant disclosed that his guilt was not the only reason he had pled guilty to previous charges. Defendant stated the following reasons for having pled guilty; lack of money, public defender's recommendations, and an arrangement to have his prison sentences run concurrently. Even though he was asked if he had pled guilty to avoid being sentenced as an habitual criminal, he gave no answer after the defense objection was overruled.

Defendant's testimony contradicted much of the testimony given by the previous witnesses. He testified that on the night of the alleged robbery he had gone to the Tower Lounge and that as he was leaving Donald Young followed him outside and asked him if he would go "riding around."

Defendant testified that he declined this offer and that Young then said defendant had a "nice looking butt" and that he would like to "take me to bed." After this statement defendant and Young had an altercation and defendant then left. In relation to his arrest, the defendant testified that he had hid from deputies at Mrs. Alcorn's apartment because he had previously been beaten by other policemen. Defendant's final contradictory testimony was that Deputy Crabtree and a trustee at the jail attempted to convince him to plead guilty, but he did not since he was not guilty.

The defendant's first assignment of error deals with the introduction of the two separate guns. The admissibility of each gun presents a separate question and will be considered independently. The first gun, State's Exhibit No. 8, was a pellet gun. The defendant contends that since the weapon was shown to have been in the possession of someone other than the defendant at the time of the robbery, it was only introduced to inflame the passions of the jury. In *Bennett v. State*, Okl.Cr., 546 P.2d 659 (1976), cert. denied 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976), this Court found it was not an abuse of the trial court's discretion to allow the introduction of weapons, identified to have been used in a robbery with firearms found at the scene of the crime and near the place where defendants were arrested. In the instant case, the pellet pistol was found near the place where defendant was arrested and was identified by the victim's testimony as having been used in the robbery. Other evidence tended to conflict with whether the gun could have been used in the robbery. However, it is well settled in this jurisdiction that if there is a question of fact as to the connection of the article introduced into evidence with the defendant or the crime, the evidence should be admitted for the determination of the jury.

The second gun, State's Exhibit No. 9, was a .38 found near the place of arrest shortly after the arrest. Defendant contends that the second gun was never connected with the charge filed against the defendant and was introduced only to inflame the passions of the jury.

In previous robbery with firearms cases, this Court has quoted 22A C.J.S. Criminal Law § 712, which states in part:

"[E]ven where it is not claimed or proved that it was used in the commission of the crime, a weapon or other instrument found in the possession of accused or his associates when arrested, or at or near the place of arrest, has been held admissible as part of the history of the arrest, and as bearing on the crime, even though it is not clearly shown to be the property of accused . . ." (Footnotes omitted)

This language was quoted with approval in *Chase v. State*, Okl.Cr., 415 P.2d 203 (1966). In that case, the police pursued a suspect vehicle shortly after a robbery, and arrested the suspects. Shortly after the arrest, the police retraced the pursuit route and discovered a broken shotgun lying in the road. The shotgun was admitted into evidence even though no evidence established that the shotgun had been in the possession of the defendants or had been used in the robbery. See also, *Harris v. State*, Okl.Cr., 450 P.2d 857 (1969).

In the instant case, the gun was found near the place of the arrest under circumstances from which it could have been inferred that the gun belonged to the defendant. The evidence linking the gun to the defendant was sufficient to justify the trial court, in the proper use of its discretion, to admit the gun since its probative value was greater than any prejudicial influence on the defendant's case. A jury sitting in judgment on a robbery with firearms case would expect the introduction of a gun. The introduction of a gun which the defendant could have used, when merely introduced into evidence, should not unnecessarily inflame the passions of the jury when introduction is necessary to prove an element of the crime.

Defendant next alleges that his statement to Deputy Crabtree that, "I want you to tell the District Attorney that I will take a year in the County and I will tell you

where you can find the stuff at," was an offer to plea bargain and should be treated as an admission obtained in the course of plea negotiations and inadmissible as such. The defendant relies upon *State ex rel. Young v. Warren*, Okl.Cr., 536 P.2d 965 (1975). However, in that case the admissions were made in the judge's chambers during plea negotiations while both parties were aware of the nature of their discussions and were voluntarily involved. In the instant case, the defendant made his admission to a deputy sheriff who was a childhood acquaintance, in an offer to be relayed to the District Attorney. There was no plea negotiation in progress to require the exclusion of any admission.

▉. A similar statement was made by the defendant in *Moreno v. State*, Okl.Cr., 504 P.2d 1241 (1972). In that case at the beginning of interrogation before any questions were asked other than whether Moreno understood his rights, the defendant made statements to the effect that he knew his rights, that the police "caught him good," and that he wanted to make a deal where he would plead guilty and help locate a missing person in return for a three year sentence. The defendant was then advised that the police officer did not have the authority to plea bargain. The defendant contended that the admission was inadmissible because the defendant had not been fully advised of his constitutional rights. This Court found that the defendant had been sufficiently apprised of his rights and further observed that the statement had been volunteered and was not the result of interrogation. In the instant case, the defendant's statement was made voluntarily and, as such, was admissible under the principle enunciated in *Johnson v. State*, Okl. Cr., 448 P.2d 266 (1969), cert. denied 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). Since the statement was admissible, the prosecutor's comments made during closing arguments that he gave the defendant the only deal which his oath and the law allowed were within the wide latitude allowed counsel during closing argument. *Raper v. State*, Okl.Cr., 560 P.2d 978 (1977), restates this Court's view that the right of argument contemplates liberal freedom of speech for counsel to discuss fully from their standpoint the evidence and inferences and deductions arising therefrom.

▉ The defendant's final assignment of error is that the State improperly cross-examined the defendant as to *prior convictions*. The defendant argues that the prosecutor's recross-examination of the defendant as to the reasons for his guilty pleas on prior convictions were collateral, immaterial, or prejudicial aspects of his prior convictions introduced to adversely affect the jury. However, this questioning appears to be in response to defendant's testimony that he pled guilty to charges of which he was guilty and that he pled not guilty in this case because he was not guilty. The prosecutor did not place undue emphasis on the prior convictions, nor is there any indication in the record that the jury was adversely affected. *Robinson v. State*, Okl. Cr., 507 P.2d 1296 (1973), restated the principle that when a defendant takes the witness stand he subjects himself to inquiry about his prior convictions of felonies or misdemeanors which involve moral turpitude, as long as the questioning does not place undue emphasis on those convictions and adversely affect the jury. Testimony as to prior convictions allowed for the purpose of impeaching a defendant's credibility is usually limited to the place and nature of the conviction, the sentence received, and the date of conviction. However, once the defendant brought into issue the reasons for the pleas leading to those prior convictions, the prosecution was privileged to rebut the testimony given.

None of the propositions argued by the defendant warrant a reversal or modification of this judgment and sentence for error or prejudice. The punishment is within the range provided by law and a review of cases on similar convictions show the punishment imposed not to be excessive. After a review of the record, this Court is of the opinion that the defendant had a fair and impartial trial, and the judgment and sentence is, therefore, *AFFIRMED*.

BUSSEY, P. J., and CORNISH, J., concur.