**David Michael BLACKWELL, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–680.**

Court of Criminal Appeals of Oklahoma.

April 20, 1983.

As Corrected July 12, 1983.

Rehearing Denied July 19, 1983.

**14**

Patti Palmer, Deputy Appellate Public Defender, Robert M. Beck, Sp. Counsel, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Jimmy D. Givens, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

David Michael Blackwell, the appellant, was charged in Cleveland County District Court Case No. CFR–79–643 with First Degree Murder in violation of 21 O.S.Supp. 1979, § 701.7. He was found guilty by a jury and punishment was set at life imprisonment in the State penitentiary. The trial court sentenced the appellant in accordance with the jury verdict, and he has perfected his appeal to this Court.

A summary of the testimony indicates that the victim, Leslie Gail Buford, was driving on an interstate in Oklahoma City late in the evening on August 23, 1979, when she had a flat tire on her car. The appellant was one of four men in a car who stopped to help her. Ms. Buford apparently agreed to accompany the driver, Brogie, to a phone when it was suggested that the other men, the appellant, Webster, and Owens, would stay with her car. Not being able to reach anyone by phone, Ms. Buford accepted a ride home from Brogie. They drove back to her car on the interstate and picked up the other three men. Brogie explained to the men, out of the presence of Ms. Buford, that they would take the girl home "but not until after we've had some fun with her."

As they proceeded on the interstate, the victim was threatened with knives by Brogie and the appellant who demanded her money and jewelry. Her clothing was removed, she was forced to have sexual intercourse repeatedly with the different men, and was sodomized, while driving in the car and after stopping at a secluded area of town. Ms. Buford's throat was slashed and each of the men stabbed her. To insure the victim was dead, the appellant threw asphalt at her head before dumping her body in a ditch.

I

Within a few weeks of the murder, the appellant and Webster entered the police department in Bethany, Oklahoma, and informed Officer Watkins that they had information concerning a crime committed in the Oklahoma City area, which they would reveal if given "amnesty". Officer Watkins immediately informed the appellant that only the district attorney's office was empowered to grant immunity from prosecution and furthermore, more information would be needed to even establish that a crime had been committed. The appellant told Officer Watkins that the crime involved the homicide of a white girl and volunteered that he could possibly direct the officer to the body. All three drove to a location where the appellant thought the homicide occurred, but the body could not be found.

Officer Watkins testified at trial that it became apparent to him that the appellant might be more involved in the homicide than was initially indicated, and after arriving back at the police station, he read the appellant his rights. At that point the appellant gave a statement that he was "forced by an unnamed subject to participate in the rape and homicide," and requested to talk to the D.A. Officer Watkins called Andrew Coats, the district attorney, and let the appellant talk with him. That conversation was not revealed at trial. However, Detective Lewis, the Oklahoma City detective assigned to Ms. Buford's case, came to the Bethany station later that day to talk to the appellant. After talking a few minutes, Detective Lewis read the appellant his rights. The appellant stated he wanted to talk to the D.A., but gave an incriminating statement to the detective anyway about the events leading up to Ms. Buford's death. At trial, the detective tes-

tified that he made no promises in return for the statement. Later that night the appellant gave another statement upon being asked to by Detective Lewis.

During the trial, both Officer Watkins and Detective Lewis were permitted to testify over the appellant's objections to the events of September 4, 1979 and statements, admissions, and confessions, made by the appellant. The appellant claims that this testimony was in contravention of 12 O.S.1981, § 2410, which provides that "[e]vidence of . . . statements made in connection with, and relevant to, any . . . pleas or offers [to plead guilty to a crime] is not admissible in any civil or criminal proceeding against the person who made the plea or offer." The appellant cites numerous cases from other jurisdictions to support his contention that the statements and confessions made by him were plea related. The appellant has correctly isolated the crucial issue as whether the conversations held between himself and the officers were a part of plea negotiations. If they were, this Court recognizes that they should have been excluded from evidence. See *Shriver v. State*, 632 P.2d 420 (Okl.Cr.1980).

In the present case the record gives no indication that the statements made by the appellant were part of plea negotiations. Instead, they were admissible as admissions or confessions voluntarily made to the police officers. *Peters v. State*, 586 P.2d 749 (Okl.Cr.1978). The testimony was clear that the appellant was informed of his rights several times in addition to initially being told by Officer Watkins that only the district attorney was empowered to offer immunity. With the knowledge that he had not only the right to remain silent, and have an attorney, but also anything he said could be used against him, the appellant chose to offer admissions and then a full confession to persons he knew could not negotiate a plea bargain with him. Although this Court recognizes that the plea negotiation process may involve more than a formal discussion across a table from the district attorney, that process will not be extended to the situation presented in this case. The appellant may have had the ex-

pectation that his actions would lead to the negotiation of a plea bargain, but that expectation was not reasonable given the circumstances surrounding the giving of those statements.

## II

■  Related to his first proposition is the appellant's assertion that an instruction should have been delivered to the jury informing them that a defendant's statements made in conjunction with plea negotiations are inadmissible at trial. The issue of whether the appellant's statements were made in conjunction with plea negotiations has been disposed of above. A review of the instructions given the jury regarding the voluntariness of the appellant's statements show that the instructions accurately cover the applicable law. This proposition of error is meritless.

## III

After disposing of the victim's body, the appellant and his accomplices cleaned the blood from themselves, picked up some gasoline in containers from a convenience store, and proceeded back to the victim's car. They drove the car to a remote part of town, doused it with gasoline and set it on fire, apparently in an effort to extinguish the possibility of fingerprints on the car. The appellant argues that it was error to allow evidence of another crime, arson, to be admitted at trial.

■  As a general rule, the appellant has correctly stated that evidence of other crimes is inadmissible, and an accused put on trial for an offense is to be convicted, if at all, by evidence which proves him guilty of that offense alone. *Allen v. State*, 611 P.2d 254 (Okl.Cr.1980); *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). However, the evidence of the burned car can be properly viewed as part of the entire transaction surrounding the events leading up to Ms. Buford's death and immediately thereafter. As shown by the evidence, there was a logical connection between the offense charged and the arson. Therefore, although an extraneous criminal transaction,

**16**

it had both probative value and logical relevancy to the crime charged and was properly admitted at trial.

## IV

■ The appellant's fourth proposition of error is based on the assumption that this Court would hold the appellant's statements inadmissible at trial. In that event, he argues that the testimony of his accomplice was uncorroborated and the remaining evidence was insufficient to support a conviction for first degree murder. Since we have already held the appellant's statements were admissible at trial, the issue of corroboration does not present itself as his own statements constituted sufficient independent evidence to connect himself to the commission of the offense. See *Davis v. State*, 524 P.2d 46 (Okl.Cr.1974).

## V

The jury was instructed on three offenses —kidnapping, robbery, and rape—any of which could serve as the underlying felony for a first degree murder conviction. The appellant claims that he was denied his right to a unanimous verdict since the verdict form read that he was guilty of first degree murder but gave no indication which offense the jury agreed upon as the underlying felony to the felony murder.

■ A unanimous verdict is guaranteed by the Oklahoma Constitution. Okla. Const., Art. 2, § 19. It is the opinion of this Court that the appellant was afforded that right. The verdict form returned by the jury read that the appellant was found guilty of murder in the first degree. All twelve jurors concurred in that finding. The unanimity guaranteed by the constitution is required only with respect to the ultimate issue of the appellant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed.

■ The appellant also claims that error occurred with respect to each of the underlying felonies. With regard to rape, he asserts that there was insufficient evidence to support a finding that he raped the victim, and no evidence was presented to establish that the victim was not his wife. The evidence produced at trial more than amply supports the allegation that Ms. Buford was forced to engage in sexual intercourse with several of the men and the appellant aided in overcoming the resistance of the victim by brandishing a knife. When a defendant aids others in committing a rape by force and violence, he too is guilty of the offense even though he did not personally have intercourse with her. *Johnson v. State*, 20 Okl.Cr. 196, 201 P. 1006 (1921). The appellant's other contention is also meritless as the testimony at trial established that the appellant was married to a woman by another name.

■ The appellant also claims that the instructions regarding kidnapping and robbery given to the jury both contained errors. More specifically he asserts that it was error for the trial court to include attempted robbery within the definition of robbery with a dangerous weapon, and to delete the intent element from the instruction defining kidnapping. The record is absent any objection at trial to the instructions or requests for alternative instructions, which this Court has repeatedly held is necessary to preserve the issue for appellate review. *Holloway v. State*, 550 P.2d 1352 (Okl.Cr.1976). Nevertheless, this Court reviewed the instructions for fundamental error. Finding none, this proposition of error is meritless.

## VI

The appellant did not testify in his own behalf at trial. He claims that the trial court, in violation of his constitutional right to remain silent, failed to admonish the jury that no evidentiary weight could be placed on the appellant's failure to testify. To support this contention he cites *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), wherein the United States Supreme Court held that upon proper request such an instruction should be delivered to the jury.

The trial transcript indicates that the defense attorney may have requested an instruction regarding the appellant's failure to testify, but through mutual assent with the trial judge agreed not to have it given. This Court was not provided a copy of the requested instruction. Defense counsel has a duty to reduce instructions to writing for submission to the trial judge and to include the requested instruction in his record on appeal to preserve the issue for review by this Court. *Voran v. State,* 536 P.2d 1322 (Okl.Cr.1975). Since that procedure was not followed, this Court will not review the issue except to determine that the appellant was not deprived of a substantial right.

## VII

Following the trial, it was brought to the trial court's attention that the OU Law Center, where the appellant's trial was held, was locked at midnight on March 29, 1980, when the jury was still deliberating during the punishment phase of the trial. The appellant contends that he was denied his right to a public trial and seeks reversal of his conviction.

Before sentence was pronounced on April 15, 1980, defense counsel brought the matter to the attention of the trial court in his motion for new trial. A hearing was held and testimony was given by John Martin, a law library assistant, that it was his duty to secure the law center at the close of the library, and at midnight March 29, 1980, he performed that duty. The trial court overruled the motion.

The purpose of the Sixth Amendment public trial requirement is to guarantee that a defendant will be fairly dealt with and not unjustly condemned. *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Our analysis of the facts surrounding the issue herein presented leads us to conclude that the purpose behind the constitutional right was not abrogated. The fact that the building was secured at midnight was an unfortunate occurrence in light of the fact that a court was in session inside the building. There are factors involved here, however, that cause the incident to be too trivial to amount to a constitutional deprivation. First, the securing of the building could not be contributed to an intentional act of a court official; in fact, the court officials involved were apparently unaware that the act occurred. Second, no restrictions were placed on the appellant, his counsel, or spectators who were present in the courtroom at the time. Third, the jury was involved in punishment phase deliberations from midnight until approximately 2:30 a.m. at which time their decision was announced; all determinations of guilt had been made by the time the law center was locked. Accordingly, we find no reversible error occurred.

The judgment and sentence is AFFIRMED.

BUSSEY, P.J., and CORNISH, J., concur.