Donald Howard COLLIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–83–255.

Court of Criminal Appeals of Oklahoma.

July 31, 1984.

Thomas G. Smith, Jr., Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen. of Okl., Alan B. Foster, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

The appellant, Donald Howard Collis, was charged with Shooting with the Intent to Kill, in violation of 21 O.S.1981, § 652, in Case No. CRF–81–2872, in the District Court of Tulsa County. The jury found him guilty and assessed his punishment at twenty (20) years' imprisonment. The trial court sentenced the appellant accordingly and from this conviction he has perfected his appeal.

On August 13, 1981, shortly after midnight, Dwight Williams and his wife, Carrie, heard a noise on the first floor of their apartment. Williams left his wife upstairs while he went downstairs to investigate. As he entered the kitchen on the first floor, he noticed the window was open. He saw a black and a white hand at the window. He then turned on the kitchen light which revealed a gun in one of the hands, though he could not remember which hand. The appellant is white. Williams was then shot in the abdomen. Upon hearing the shot

Mrs. Williams ran to an upstairs window where she claims she saw a man she recognized as the appellant. The appellant was arrested by the police at approximately 1:30 a.m. that same morning in the same apartment complex where the shooting occurred. The appellant claims he was visiting his girlfriend. After his arrest, the appellant consented to a search of his car which revealed some .38 caliber ammunition. The gun which shot Williams was never found.

Mrs. Williams had dated the appellant prior to reuniting with her husband. At trial both Williamses testified that they had received threats from third parties that the appellant wanted to kill Mr. Williams. None of the third parties testified at trial. This testimony was not objected to and was the only evidence introduced at trial to prove the appellant possessed the intent to kill Mr. Williams prior to the shooting.

The only evidence proffered to show the type of weapon used in the shooting was Mr. Williams' testimony that his doctor had told him it was a .38 caliber bullet. The bullet was not introduced at trial. Nor did Dr. Waston, during his testimony, state that the bullet was a .38 caliber. This hearsay, coupled with Mrs. Williams' identification of the appellant and the .38 caliber ammunition found in the appellant's car, clearly implicated the appellant. Again, there was no objection and the result was extremely damaging.

In closing argument defense counsel encouraged the jury to sentence the appellant, or whoever committed this crime, to the maximum penalty:

McCormick: I realize, like everybody in this courtroom, what a serious decision that each one of you have to make. On the one hand we have the rights of the victim. From the evidence that's been presented he received very serious wounds. The doctor testified to the fact and the fact that if it had been a little higher or lower, I don't recall, he very likely would have died. Fortunately it was neither higher or lower and he lived and I believe the doctor commented that right now things look favorable, that fortunately he wouldn't have any permanent injury, but that doesn't lessen the experience that the man had to go through and *Don Collis, or whoever committed this, regardless of the man pulling through, he should be punished to the full extent of the law.* (Emphasis added)

(Tr. 132–133). This was not followed by any type of plea by counsel that the appellant was innocent. The effect—in addition to requesting the maximum sentence—was a near concession on defense counsel's part that the appellant had committed the crime.

The appellant asserts that these instances prove that he was denied effective assistance of counsel. We agree.

■ This Court has the benefit of the United States Supreme Court's recent opinion to use when determining what does and does not constitute ineffective assistance of counsel. In *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set out the "proper standards for judging a criminal defendant's conviction of death sentence to be set aside because counsel's assistance at trial or sentencing was ineffective." The Court explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at ——, 104 S.Ct. at 2063. The Court developed a two tiered test to determine whether counsel's assistance was so defective as to require reversal of a conviction. "First the defendant must show that counsel's performance was deficient" and "[s]econd, the defendant must show that the deficient performance prejudiced the defense." *Id.* An application of this two tiered test to the instant case leads to the conclusion that the appellant was, in fact, denied his right to effective assistance of counsel.

■ As to the first tier of the test, the court must consider whether counsel's as-

sistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards can be guides used to determine what is reasonable, though they are not absolute rules. *Id.* Judicial scrutiny of counsel's performance must be highly deferential and the court must engage in a strong presumption that counsel's conduct was reasonable assistance. To overcome this presumption, the appellant must show that under the circumstances the challenged action could not be considered sound trial strategy. *Id.* at ——, 104 S.Ct. at 2065. To decide actual ineffectiveness, the court must consider "the reasonableness of counsel's conduct on the facts of the particular case, viewed at the time of counsel's conduct." *Id.* This standard is consistent with the standard this Court has used when determining whether a defendant was provided effective assistance of counsel. *Johnson v. State,* 620 P.2d 1311 (Okl.Cr.1980).

■ We cannot conceive of how defense counsel's conduct (or lack thereof) concerning the blatant hearsay testimony given by Mr. and Mrs. Williams of the death threats could have been valid trial strategy. Defense counsel's failure to object to this testimony and eliciting additional hearsay testimony on cross-examination, when this was the sole evidence of the appellant's intent, is beyond justification. Not only was this inadmissible testimony presented to the jury for consideration, but defense counsel failed to properly preserve this error for review by this Court. *See Roberts v. State,* 568 P.2d 336 (Okl.Cr.1977) (where evidence is admitted without objection the defendant may not complain on appeal about its introduction).

Nor can defense counsel's failure to object to Mr. Williams' hearsay testimony concerning the type of bullet that shot him be justified as sound trial strategy. This, too, was the only evidence proffered by the State to show the type of firearm used in the shooting. That testimony coupled with the .38 caliber ammunition introduced into evidence found in the appellant's car is so damaging that the failure to object to the admission of this evidence indicates that this attorney was not performing within the range of reasonable assistance. Again, the error was not properly preserved for review on appeal because there was no objection.

The defense counsel's closing argument encouraging the jury to give "Don Collis, or whoever committed this crime" the maximum penalty is also without reason. Taken in the context of the complete closing argument, this point appears to be a concession of his client's guilt. It is beyond the stretch of our wildest imagination to find a valid trial strategy in this conduct.

On the basis of the defense counsel's failure to object to the admission of hearsay testimony on two critical issues at trial and his closing argument, we find defense counsel was not performing with the reasonably competent attorney standard.

■ Having shown that the defense counsel's performance was deficient, the appellant must actively prove that counsel's performance prejudiced the defense. "Even if a defendant shows that particular errors were unreasonable, ... the defendant must show they actually had an adverse effect on the defense." —— U.S. at ——, 104 S.Ct. at 2067. Defendant's showing that the error had some conceivable effect on the outcome is not sufficient. Not every error that has some conceivable impact on the trial undermines the reliability of the result of the proceeding. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at ——, 104 S.Ct. at 2067. A verdict only weakly supported by the record is much more likely to have been adversely affected by errors than a verdict strongly supported by the record. *Id.* at ——, 104 S.Ct. at 2069.

Had defense counsel objected to the hearsay evidence in this case, the outcome probably would have been different. If the trial judge had sustained the objections, the remaining evidence would have been insufficient to support a conviction. If the trial judge had overruled the objections, we would have reversed. The only evidence remaining to implicate the appellant was Mrs. Williams' eyewitness identification. She testified that immediately after the shooting, at night, without her glasses she saw the appellant from her second story window on the ground below.[1]

Although we are reversing this case because of ineffective assistance of counsel, we feel we must comment on the State's conduct at trial. This Court does not condone a prosecutor's attempt to submit into evidence testimony which is clearly inadmissible, regardless of the competency of the defense counsel. "The prosecutor is both an administrator of justice and an advocate .... The duty of the prosecutor is to seek justice, not merely to convict." ABA Standards for Criminal Justice 3–1.-1(b) & (c) (2nd Ed.1980) ("The Prosecution Function"). "It is unprofessional conduct for a prosecutor to knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence." *Id.* at 3–5.6(b). "A prosecutor should not institute, cause to be instituted, or permit the continued pendency of criminal charges in the absence of sufficient admissible evidence to support a conviction." *Id.* at 3–3.0(a).

Because we find that the appellant was denied effective assistance of counsel in that his counsel's conduct fell below the range of reasonable assistance this conduct resulted in sufficient prejudice at trial to undermine the reliability of the proceeding and result, we REVERSE and REMAND this case for a new trial.

PARKS, J., concurs.

BUSSEY, P.J., concurs in result.

---

**1.** Considering the circumstances surrounding this identification, a cautionary instruction on eyewitness identification would be appropriate. *Hair v. State,* 597 P.2d 347 (Okl.Cr.1979).