Charles A. FOSTER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–76.

Court of Criminal Appeals of Oklahoma.

Feb. 4, 1986.

Rehearing Denied March 17, 1986.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Charles A. Foster was convicted in Muskogee County District Court of Burglary in the Second Degree, Larceny of an Automobile, Grand Larceny, each After Former Conviction of Two Felonies, and Murder in the First Degree. He received sentences, as recommended by the jury, of ninety years' imprisonment on the first three convictions and the death penalty for the murder conviction.

The victim, seventy-four-year-old Claude Wiley, owned a grocery store in Muskogee and made local deliveries. The night he was killed, he had made a delivery to appellant's home. While waiting for appellant's wife, Eula Mae Foster, to return with the payment for the groceries, according to Mrs. Foster's testimony, appellant suddenly started accusing the victim of having "something to do" with his wife, pushing him and then striking him with a baseball bat. Appellant had stood behind the front door with the baseball bat when Wiley first entered their home. The medical examiner testified that the victim received three stab wounds to the chest. He had blunt force lacerations to the ear, orbit of the right eye, and on top of the head. The skull was extensively fractured and there was massive hemorrhaging.

Mrs. Foster also testified that appellant wrapped the victim, who was still breathing, in a blanket and left in Mr. Wiley's El Camino. He returned shortly and then left for a period of one and one-half hours. The couple then fled Oklahoma in the El Camino. Appellant had in his possession a number of the victim's household items. Mrs. Foster said they got rid of the victim's vehicle and then bought a Cadillac in Texas with cash taken from the deceased.

Appellant testified that he was away from home during the time of the crimes. He said he knew nothing of the incident until his wife picked him up in the victim's El Camino at the grocery store where he was shopping.

The State was allowed to introduce at trial, over appellant's objection, a baseball bat which according to Mrs. Foster's testimony was similar to the one used by appellant to strike the victim. Appellant contends that the bat had no connection to the crimes and, therefore, his right to a fair trial was prejudiced by its admission. The bat displayed was one Mrs. Foster selected at a sporting goods store and was new. The one allegedly used by appellant to beat the victim was older, had a broken handle, and would have been stained by the victim's blood. The new bat was marked to show where the original one was broken. Appellant had discarded in Texas the actual bat used. The judge admonished the jury to consider the bat only for its demonstrative value.

■ The baseball bat was relevant to the case in allowing the jury to visualize one of the weapons used in the attack. Relevant evidence should be excluded, however, if its probative value is outweighed by the danger of it having a prejudicial, confusing or misleading effect on the jury. 12 O.S.1981, § 2403. This Court held in *Pannell v. State*, 640 P.2d 568, 571 (Okl.Cr. 1982), that a weapon is admissible if there is sufficient evidence to connect it to the offense. There, as here, the connection was only in similarity between the actual bat and the offered bat. Yet, in the absence of the demonstration of prejudice to defendant, there is no denial of a fair trial.

■ We fail to discern prejudice suffered by appellant herein. The prosecution and the court were careful to inform the jury that the bat was not the actual weapon used, but only a likeness. We find this case distinguishable from *Sitsler v. State*, 603 P.2d 1142 (Okl.Cr.1979), upon which appellant relies for authority in urging error. We disapproved in *Sitsler* of the prosecutor's display of a weapon before the jury, supposedly being like that used in the crime, without informing the jury until closing argument that it was not the weapon used in the offense and without offering it into evidence. We find no harm resulting from admission of the bat. *See Noah v. State*, 562 P.2d 950 (Okl.Cr.1977).

Appellant next contends the trial court erred in failing to instruct the jury, though not requested to do so, that Eula Mae Foster's testimony must be corroborated since she was an accomplice to appellant. We find this assignment to be without merit for two reasons. The first is that failure to give such an instruction does not constitute error if there is no request. *Garcia v. State*, 639 P.2d 88 (Okl.Cr.1981); *Samples v. State*, 337 P.2d 756 (Okl.Cr.1959). Appellant did not request the desired instruction nor did he submit a proposed one to the trial court.

■ The second reason we do not find error by the trial court in this regard is that appellant's theory of defense was alibi. To instruct the jury that Mrs. Foster was an accomplice is inconsistent with this evidence, as well as the State's.

■ The State's evidence is that Mrs. Foster did not know of the attack until it occurred. She did not participate in it or the other crimes. Furthermore, there was presented evidence which was corroborative of the State's theory. *Gautt v. State*, 551 P.2d 1150 (Okl.Cr.1976). When the couple reached a motel in Dennison, Texas, on the evening of the offenses, appellant registered under an assumed name. On the evening of the crimes and again later, appellant engaged in flight. The Fort Worth police came to the car in which the Fosters were sleeping in a park a few days after the crimes and ordered appellant out. He fled the scene and was not captured for several months. And, though coming in the penalty stage of trial, a former cellmate of appellant's testified of his admissions of killing the victim and wrapping him in a blanket. The absence of the instruction did not deny appellant a fair trial.

■ Appellant complains for the first time on appeal of the court's instruction concerning the defense of alibi. He urges it failed to clearly place the burden on the State to disprove his alibi defense. As noted earlier, his failure to object to the

instruction given or to submit a proposed instruction constitutes waiver of error. *Jetton v. State*, 632 P.2d 432 (Okl.Cr.1981). Moreover, the instructions which the trial court did give properly apprised the jury of the law concerning the State's burden of proof. When taken as a whole, the instructions were adequate. *Hines v. State*, 684 P.2d 1202 (Okl.Cr.1984).

■ Again, appellant claims for the first time on appeal error occurred because of the absence of a third instruction. The instruction which he asserts should have been given was a specific cautionary instruction concerning the weight to be given Mrs. Foster's testimony. He asserts that such an instruction was warranted because she gained a personal advantage by testifying. Originally, Mrs. Foster was charged as a principal to the same offenses as her husband. They were subsequently reduced to Accessory After the Fact, and she received concurrent five year sentences, with two and one-half years suspended.

The charges against Mrs. Foster were changed and her pleas entered before appellant's trial. She was thoroughly cross-examined regarding her sentences before the jury. It does not appear that she received anything in exchange for her testimony. Additionally, proper instruction regarding judging the credibility of witnesses was given to the jury. For a like disposition of this issue, see our opinion in *Gee v. State*, 538 P.2d 1102 (Okl.Cr.1975). See *Oliver v. State*, 568 P.2d 1327 (Okl.Cr. 1977).

■ Appellant made a pretrial motion for change of venue based on adverse publicity. The trial judge reserved ruling on the motion until after voir dire. At that time, the trial judge denied the motion. Upon our review of the evidence offered in support of the motion, that is, three affidavits of citizens from the community and the newspaper articles published in a local periodical concerning the crimes and suspects, we find no error occurred in denying the motion.

■ Of the potential jurors, two were excused who could not set aside opinions formed from pretrial publicity. A substantial voir dire was conducted and many veniremen had read newspaper accounts of the crimes, mostly those articles published in April, 1983, immediately following the incident. The newspaper articles of potential prejudicial value were those published in the later stages of the investigation. Of the jurors who had read any accounts, all except the two mentioned above said they could ignore that information and fairly and impartially judge the case on the evidence presented at trial. This is the standard applied by this Court because a defendant cannot expect a jury ignorant of the facts. *Nauni v. State*, 670 P.2d 126 (Okl.Cr.1983).

■ A defendant carries the burden of persuasion in overcoming the presumption that he or she can get a fair and impartial trial. *Hammons v. State*, 560 P.2d 1024 (Okl.Cr.1977). Prejudice from exposure to adverse pretrial publicity must be shown. *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984). However, we are unable to discern any after a thorough review of the record.

■ Appellant further stresses in regard to voir dire that the trial court erred in not allowing each potential juror to be questioned individually. We note that when such appeared necessary for one juror, it was permitted by the trial court.

■ Although such a practice may be allowed by a trial judge, *see Nauni* supra, and *Morrison v. State*, 619 P.2d 203 (Okl. Cr.1980), it is an extraordinary measure. Practically every murder case is well covered by the media. Usually the bias of potential jurors can be ascertained without unduly burdening the examination process. Unless the danger of prejudicing the jurors by exposure to damaging information is a grave problem or some special purpose would be served, it is unlikely that individual voir dire would be justified. We find no abuse of discretion in not allowing the procedure.

Four prospective jurors were excused for cause upon acknowledging that they could not give a sentence of death though it was authorized under the evidence and law. Appellant claims that these jurors should not have been questioned by the trial judge in such a way that they had to state definitely whether they could or could not consider imposing the death penalty. Each of these jurors initially expressed reservations they had about imposing the death penalty. When pressed for a definite answer as to whether they could, however, each stated they could not. We find nothing improper in examining for clear statements of the veniremen's views, especially since this is the essence of the test to excuse jurors for cause based upon their view of the death penalty. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985). Indeed, these answers well meet the standard established by the United States Supreme Court for excusal of jurors. *Wainwright v. Witt,* 469 U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). *Witt* confirms the proper test as being whether one's views of capital punishment would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.

Appellant further urges in this regard that "death-qualifying" the jury denied him a jury consisting of a fair and impartial cross-section of the community and empaneled one predisposed to deny the presumption of innocence. We have previously held that this practice does not deny a defendant a fair trial. *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985). A defendant is not entitled to a jury composed of those who will not follow the law or whose views concerning the death penalty would taint their impartiality. *Witt* and *Witherspoon,* supra. This assignment of error is without merit.

Appellant alleges his attorney made a number of critical errors and thereby rendered ineffective assistance of counsel in derogation of the guarantee to counsel of the Sixth Amendment to the United States Constitution. He initially asserts that evidence surrounding the homicide had been gained because of an illegal search of his residence, and had his attorney so moved, it would have been suppressed. The investigating officers searched the home appellant and his wife had occupied on the morning after they left it. Police had gone to this address after the victim was reported missing because they were advised that this was one of three locations where he had intended to deliver groceries. Neighbors also verified the fact that Wiley had been at that location on the previous evening. When they arrived, they found a tooth and blood on the front porch and then received no response from within. They entered upon prying a lock and found more broken teeth and great quantities of blood.

The initial entry was justified by a belief the victim could be inside and in need of immediate aid. The apparent exigent circumstances fully warranted the entry, and the consent police did obtain from their landlady was unnecessary. An apparent emergency will justify a warrantless search, and at this point the police only knew the victim was missing, not that he was dead. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

Once inside, the police are allowed to seize evidence which is in plain view. *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). They were not required to leave and obtain a search warrant having properly viewed evidence of criminal activity. Thus, counsel's performance was not deficient concerning the search.

Appellant complains his counsel invited introduction into evidence of a written statement Mrs. Foster made to the police upon arrest and that it contained prejudicial hearsay. He compares the case of *Collis v. State,* 685 P.2d 975 (Okl.Cr.1984), to the present one. Counsel there failed to object to the admission of hearsay evidence which provided the only evidence of the element of intent. We found the testimony

extremely damaging. This failure was in conjunction with a near concession of defendant's guilt during closing argument.

The evidence admitted herein cannot be viewed as so harmful, nor as outcome determinative as that in *Collis*. It did contain statements concerning bad acts of appellant, but none which would establish the elements of the offenses charged or which could compare to counsel's admission of his client's guilt. Appellant has not shown prejudice so great as to overcome the presumption of effective assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Claims of ineffectiveness should not be judged from the vantage of hindsight. *Id.*

■ Next, appellant now claims on the basis of a single statement of his attorney from the record that counsel neglected to advise him whether he should take the stand in his own defense. We find this to be an unwarranted conclusion. When read in context with other statements, it is apparent counsel and the court discussed with appellant the ramifications of testifying and his right to not testify. We are not prepared to say that counsel should have tried to prevent his client from testifying in his own defense. We find this assignment to be without merit.

■ Appellant also assigns as ineffectiveness his trial lawyer's failure to request the instructions previously discussed in this opinion, that being those of: accomplice corroboration; cautionary instruction concerning an informer's testimony; and, an alibi instruction. As previously noted, we do not find the instructions in question necessarily warranted or critical in this case. *Strickland* offers a two prong analysis when counsel's conduct is alleged to be ineffective. 466 U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Initially, counsel's performance must be shown to be deficient. Assuming such can be established, a showing of prejudice as the result of his or her performance must be made. In light of our previous disposition of the issue of the absence of these instructions, we hold that appellant has not met his burden in demonstrating his conviction or sentence resulted from a breakdown in the adversary process. *Id.*

■ The motel registration receipt from Denison, Texas, and a pawn shop receipt for a television stand, two lamps, a radio and a watch was introduced into evidence without objection from defense counsel. Appellant claims that these items constituted inadmissible hearsay in the absence of a sponsoring witness from the motel and the pawn shop. Although these items are business records as such, appellant himself acknowledged registering at the motel in Denison, Texas, and of pawning some of the victim's goods. Mrs. Foster's testimony also confirmed these matters. In light of this evidence which verified the information in the tickets, any error of counsel in not objecting to their introduction was at best harmless.

Appellant's assignments of counsel's ineffectiveness do not persuade this Court that but for his errors, a different result would have obtained in the conviction or in the sentence. *Strickland*, supra.

■ Appellant contends that the jury should have been instructed of Murder in the Second Degree based upon both a felony-murder theory and a depraved mind murder theory. We disagree. Lesser included offenses should be given to the jury, but only when warranted by the evidence. *Carlile v. State*, 493 P.2d 449 (Okl.Cr. 1972).

■ Robbery, the predicate felony in second degree felony murder, cannot be accomplished with a dangerous weapon. If it is, the offenses are Robbery with a Dangerous Weapon and first degree felony murder. 21 O.S.1981, § 701.7(B). The victim was killed by being severely beaten with a baseball bat and was then stabbed with a sharp instrument. A firearm need not be used to prove that the instrument is a dangerous weapon. *Hay v. State*, 447 P.2d 447 (Okl.Cr.1968).

■ Appellant contends there is no direct evidence that he intended to kill the

victim, and thus, a depraved mind murder instruction was warranted. Direct evidence of intent to commit an offense, however, is oftentimes lacking. Circumstantial evidence must be relied upon in determining with what purpose a person acted.

■■■ The evidence presented at trial was that appellant had his wife call the victim and request that he come to their home to deliver some groceries. When he arrived, appellant hid behind the front door with a baseball bat. Without cause, he started a fight with the aged man. Appellant being a young man thirty-five years of age, beat the victim until the victim collapsed. He then left the house with the victim wrapped in a blanket. The victim was found dead and with stab wounds eleven days later under brush and under some car mats. The victim's car, money, jewelry, and some household items were stolen by appellant who fled from the State.

We do not agree that this evidence supports an instruction that appellant's acts were "imminently dangerous" but "without any premeditated design." 21 O.S.1981, § 701.8. The State's evidence does not call for the instruction, and appellant's testimony was that he knew nothing of the incident. Such an instruction was not required.

Appellant's next two assignments of error concern the aggravating circumstance which allows the imposition of the death penalty in a murder case if the jury finds a "probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." 21 O.S.1981, § 701.12(7). He claims that the circumstance is vague on its face, the trial court erred in not defining its elements, that the jury is not provided definitive guidance in applying it, and that it is being evaluated in an arbitrary manner. Therefore, he argues, when the death penalty is imposed because of a finding of this aggravating circumstance, the Eighth and Fourteenth Amendments to the United States Constitution are violated.

Appellant acknowledges that the Supreme Court has upheld as constitutional this aggravating circumstance if it is applied and interpreted in a limiting and consistent manner, citing *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). We recently addressed the application of this law in Oklahoma. *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985). We held in *Liles* that this circumstance, which was given to the jury in the statutory language in each instance, is specific and readily understandable. No special instruction is required to explain its meaning to the jury. 702 P.2d at 1031.

We also noted in *Liles* that the method by which a jury may consider imposing the death penalty, that is by weighing any mitigating circumstances against the aggravating circumstance, is adequate guidance to avoid constitutional violations. *Id.* citing *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). See also 21 O.S. 1981, § 701.11. The jury was instructed accordingly in the instant case.

■■■ The jury in this case also found to exist the aggravating circumstance that the killing was "especially heinous, atrocious, or cruel." Appellant contends that this Court has failed to prescribe a sufficiently narrow test for its application for it to be constitutionally applied. We have previously defined each of the three terms, and the jury herein was given these definitions in the instructions. *Nuckols v. State,* 690 P.2d 463 (Okl.Cr.1984). We think that the evidence is sufficient to show that either the killer's attitude or the victim's suffering warrant a finding of this aggravating circumstance. See *Liles,* supra; *see also Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985).

■■■ Appellant complains of comments made by the prosecutor during closing argument of the second stage. No objection was lodged nor was request made for admonishment of the jury. Failing to preserve possible error for review, we consider it only for fundamental error and find none. *Luker v. State,* 552 P.2d 715 (Okl. Cr.1976).

Appellant requests this Court to conduct a proportionality review of his sentence to that of others found guilty of murder. However, the Legislature recently eliminated this previously mandatory procedure from Oklahoma's death penalty statute. 1985 Okla.Sess. Laws, ch. 265, § 1. This Court is not required to perform such a comparison to meet constitutional standards. *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Jurek v. Texas,* supra. The system of capital sentencing in Oklahoma is similar to that in Texas as discussed in *Pulley.* Before the death penalty may be assessed, the jury must find at least one aggravating circumstance to exist, which must be proven beyond a reasonable doubt. Then the jury must determine that the aggravating circumstance is not outweighed by mitigating circumstances before death may be considered as a penalty. 21 O.S.1981, § 701.-11. This Court too must determine whether the evidence supports the jury's finding of the presence of the aggravating circumstance and whether it was imposed under the influence of passion, prejudice or any other arbitrary factor. 1985 Okla.Sess. Laws, ch. 265, § 1. As the Supreme Court noted in *Pulley,* the *Jurek* court indicated that to additionally require a proportionality review on appeal is superfluous. It is not necessary under our present scheme in order to guard against arbitrarily imposed death sentences. *Id.* The appellant is not denied a substantial protection in the absence of a proportionality review, nor is his situation altered to his disadvantage. *J.M.R. v. Moore,* 610 P.2d 811 (Okl.Cr. 1980). Therefore, we apply this procedural change in the statute currently though he was convicted before its effective date.

Finally, appellant contends that the death penalty was unconstitutionally imposed because neither Oklahoma law nor the instructions gave the jury particularized guidance for considering mitigating circumstances. However, the Supreme Court has upheld sentencing schemes similar to Oklahoma's which direct the sentencer to weigh mitigating circumstances against aggravating circumstances. *Prof-*

*fitt v. Florida,* 428 U.S. 255, 96 S.Ct. 2960, 49 L.Ed.2d 973 (1976). The Court stated:

> While the various factors to be considered by the sentencing authorities do not have numerical weights assigned to them, the requirements of *Furman* are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition.

*Id.* at 258, 96 S.Ct. at 2969. *See also Jurek,* supra.

The jury herein was given three statutory aggravating circumstances to consider. Besides the two previously mentioned, a third was that appellant was previously convicted of felonies involving the use or threat of violence. The jury was advised that it could consider appellant's age and affirmative denial of the charges, along with any other mitigating circumstance they determined. Mitigating circumstances were defined as those which in fairness and mercy may be considered as extenuating or as reducing the degree of moral culpability or blame. The guidance was sufficiently precise because it focused the jury on the circumstances of appellant's case in deciding whether to impose the death penalty.

In consideration of the foregoing, we find that the jury's finding of the presence of all three aggravating circumstances beyond a reasonable doubt is supported by the evidence. We do not find reason to believe that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. 1985 Okla.Sess. Laws, ch. 265, § 1.

Finding no error warranting reversal or modification, judgments and sentences are AFFIRMED.

PARKS, P.J., specially concurs.

BRETT, J., concurs.

PARKS, Presiding Judge, specially concurring:

I concur that the judgment and sentence of the District Court should be affirmed, based on the record before us on direct appeal. I take exception to the statement that we need not conduct a proportionality review in this case pursuant to 1985 Okl. Sess. Laws, ch. 265, § 1. We have previously held that application of this law to those cases, pending on appeal at the time of the statute's enactment, would render the statute *ex post facto* law. *Green v. State*, 713 P.2d 1032, 1041 (Okl.Cr.1985). Therefore, the proportionality review mandated by 21 ·O.S.1981, § 701.13(C), still should be conducted. I do not believe that our failure to apply the proportionality review in this case constitutes error, however, because I have compared this sentence to those cases affirmed[1] or modified[2] by this Court, and we find the sentence to be permissible.

I also wish to express my concern over the allegation of ineffective assistance of trial counsel. My chief concern with this allegation arises from the failure of the attorney to file a motion to supress evidence seized from the appellant's home. The test for ineffectiveness of counsel, under the Sixth Amendment, is set out by the United States Supreme Court, as follows:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.

*First, the defendant must show that counsel's performance was deficient.* This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Secondly, the defendant must show that the deficient performance prejudiced the defense.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693 (1984).

It is clear to me that a reasonably competent attorney would have filed a motion to suppress all physical evidence derived from the appellant's home.

The facts relating to the Fourth Amendment issue are as follows: Officer Gibson was investigating the missing person report concerning the victim. His investigation led to the appellant's residence, for the reasons explained more fully in the majority opinion. *See supra* at 1038–1039. Upon ariving at the home, he observed on the front porch what he thought was a blood smear. He also discovered a tooth. After talking to neighbors and contacting the person who worked as landlady, he searched the back of the house. He then obtained permission from the landlady to

---

1. *Liles v. State*, 702 P.2d 1025 (Okl.Cr.1985); *Cooks v. State*, 699 P.2d 653 (Okl.Cr.1985); *Banks v. State*, 701 P.2d 418 (Okl.Cr.1985); *Cartwright v. State*, 695 P.2d 548 (Okl.Cr.1985); *Brogie v. State*, 695 P.2d 538 (Okl.Cr.1985); *Bowen v. State*, 55 O.B.J. 2520 (Okl.Cr.1985); *Stout v. State*, 693 P.2d 617 (Okl.Cr.1984); and *Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984); *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984); *Stafford v. State*, 669 P.2d 285 (Okl.Cr.1983); *Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983); *Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983); *Davis v. State*, 665 P.2d 1186 (Okl.Cr.1983); *Ake v. State*, 663 P.2d 1 (Okl.Cr.1983); *Parks v. State*, 651 P.2d 686 (Okl.Cr.1982); *Jones v. State*, 648 P.2d 1251 (Okl.Cr.1982); *Hays v. State*, 617 P.2d 223 (Okl.Cr.1980); and, *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980), *modified* on other grounds, *sub.*

nom., *Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984).

2. *Kelly v. State*, 692 P.2d 563, (Okl.Cr.1984); *Eddings v. State*, 616 P.2d 1159 (Okl.Cr.1980); as *modified*, 688 P.2d 342 (Okl.Cr.1984); *Morgan v. State*, No. F–79–487 (Okl.Cr.Nov. 14, 1983); (Unpublished); *Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982); *Glidewell v. State*, 663 P.2d 738 (Okl.Cr.1983); *Jones v. State*, 660 P.2d 634 (Okl.Cr.1983); *Driskell v. State*, 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983); *Munn v. State*, 658 P.2d 482 (Okl. Cr.1983); *Odum v. State*, 651 P.2d 703 (Okl.Cr. 1982); *Burrows v. State*, 640 P.2d 533 (Okl.Cr. 1982); *Franks v. State*, 636 P.2d 361 (Okl.Cr. 1981); *Irvin v. State*, 617 P.2d 588 (Okl.Cr.1980).

search the residence, pried open the lock, and went inside.

The State concedes, and properly so, that the consent from the landlady was insufficient to support the warrantless search of the appellant's home. *See Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). The State seeks to justify the search under the exigent circumstances exception to the Fourth Amendment. The State claims exigent circumstances were shown in Officer Gibson's testimony that he thought Mr. Wiley might have been inside the residence. Certainly, an emergency search of premises to discover an injured victim is permissible under the Fourth Amendment. *See Chaney v. State,* 612 P.2d 269, 277 (Okl.Cr.1980), *rev'd on other grounds sub. nom. Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984). On the otherhand, there is no "murder scene" exception to the warrant requirement. *See Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

It would appear that Officer Gibson's actions negate a finding of exigent circumstances. The officer interviewed several witnesses, searched the back of the house, and obtained permission to search from the landlady *before* he entered the house, presumably to search for the victim. However, the issue was never squarely presented to the trial court, and the proper questions regarding the existence of exigent circumstances were never raised. I, therefore, hesitate to declare the search unconstitutional without further inquiry being made. And, without a finding that the search was unconstitutional, I cannot say the appellant has satisfied the prejudice prong of the *Strickland* test. Therefore, based on this record, I do not believe the conviction can be reversed.

However, it would appear that the resolution of this issue can, and should, be made by the trial court on appellant's application for post-conviction relief. In that forum, the proper questions can be raised, and an adequate record made, to determine whether appellant was prejudiced by counsel's ineffectiveness.

For the above and foregoing reasons only, I concur in the majority's decision to affirm the judgment and sentence herein.

