**Benjamin BREWER, Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F-83-677.**

Court of Criminal Appeals of Oklahoma.

April 18, 1986.

Rehearing Denied May 19, 1986.

**358**

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

The appellant, Benjamin Brewer, was convicted of First Degree Murder (21 O.S. 1981, § 701.7) and sentenced to death in Tulsa County District Court, Case No. CRF–78–2137, in 1979. This Court reversed the conviction on appeal because appellant had not received a fair trial. *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982). Upon retrial, appellant was again convicted of First Degree Murder and again sentenced to death. We affirm.

Karen Joyce Stapleton was found murdered in her Tulsa County apartment on August 17, 1978. She had died as a result of twenty stab wounds. Physical evidence introduced at trial corroborated Brewer's confession that he had killed Stapleton. The main issue of fact at trial was Brewer's sanity at the time of the slaying.

### I.

In his first and second assignments of error, the appellant claims that his motion to dismiss should have been sustained because the intentional overreaching by the prosecutor in the first trial (a) gave rise to an exception to the general rule that retrial is not barred by double jeopardy when the appellant requests the same and (b) denied him his constitutional right to a fair and speedy trial.

The general rule is that double jeopardy principles do not bar retrial following appellate reversal. *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Under that rule, retrial is clearly not a violation of double jeopardy in this case as the reversal was granted at appellant's request.

Nevertheless appellant argues that this case falls under another category of cases, namely those in which double jeopardy precludes retrial following a mistrial if the defendant was goaded into requesting the mistrial by prosecutorial overreaching designed to provoke the mistrial. *See, United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

■ Without deciding whether the mistrial rule should ever be applied to reversals on appeal, we find that the retrial in this case was not barred by double jeopardy because in order to invoke double jeopardy as a bar to retrial following a mistrial, the appellant must show not only that there was error but that such error was committed by the prosecution for the purpose of forcing the defendant to move for a mistrial. *Divans v. California,* 434 U.S. 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (1977). The record is devoid of evidence that District Attorney Fallis was provoking a mistrial because there was a danger of acquittal or because a retrial would afford the prosecution a more favorable opportunity to convict the defendant. "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v. Kennedy,* 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982).

Appellant filed a supplemental brief urging this Court to modify his sentence to life imprisonment on the basis of a recent United States Supreme Court decision, *Morris v. Matthews,* —— U.S. ——, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986). Inasmuch as his argument is based on the premise that jeopardy bars retrial, a contention we reject, this argument must also fail.

### II.

■ We also reject the appellant's claim that the lapse of several years between the commission of the crime and the trial because of the reversal denied him his right to a fair speedy trial. We are cognizant of the greater difficulty involved in proving a defense five years after the fact. But at the same time, the State's case is also harder to prove after such a delay. Unfortunately the wheels of justice often turn slowly. It is no more a disadvantage or advantage to one party than to the other that the case was not properly tried the

first time. We have already determined that the errors which mandated reversal of the case were not committed for the purpose of obtaining a new trial at a more favorable time. Thus, we sympathize with the appellant's plight but find no constitutional error. *See United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966) (a defendant who obtains a reversal of a conviction through appeal may be retried in the normal course of events, notwithstanding the delay incident to such legal proceedings).

### III.

In his third assignment of error the appellant contends the trial court erred in overruling his motions to strike the bill of particulars and to accept his plea of guilty. The appellant had attempted to plead guilty in 1978 before the State filed a bill of particulars seeking the death penalty. Appellant has twice urged this Court to rule the district court had to accept the plea and impose life imprisonment. Twice this Court has rejected his argument.

■ Appellant's admitted reason for wanting to have his guilty plea accepted is his belief that entering a guilty plea to first degree murder before a bill of particulars is filed precludes the imposition of the death penalty. We find no authority for this theory. It is clear from reading the statutes that imposition of the death penalty is not contingent upon the filing of a bill of particulars.

A person who is convicted of or pleads guilty or nolo contendere to murder in the first degree is subject to punishment by death or by imprisonment for life. 21 O.S. 1981, § 701.9. The death penalty cannot be imposed unless at least one statutory aggravating circumstance is found to exist beyond a reasonable doubt, and the State cannot present evidence in aggravation that has not been made known to the defendant prior to trial. 21 O.S.1981, §§ 701.-11 and 701.10, respectively.

■ The filing of a bill of particulars is not required per se by statute but is simply written notice of which aggravating circumstances the State intends to prove and what evidence will be introduced to prove them. Of course if the defendant pleads not guilty, once trial has commenced it is too late for the State to notify the defendant of what evidence in aggravation will be relied upon. Thus, no evidence can be presented on which the judge could instruct and from which the jury could find beyond a reasonable doubt that an aggravating circumstance was present, justifying imposition of the death penalty.

But when a defendant pleads guilty or nolo contendere to first degree murder, there is no commencement of a trial to mark the deadline for notice by the State. In reading 21 O.S.1981, § 701.10 in conjunction with 22 O.S. 1981, § 973, it is clear that under these circumstances the court, upon the suggestion of either party that there are mitigating or aggravating circumstances to be considered, may in its discretion hear the evidence at a specified time and upon notice to the adverse party. Unlike commencement of a trial, acceptance of a guilty plea does not preclude the filing of a bill of particulars.

■ Even if this Court were to find that the trial court erred in the case at bar in failing to accept appellant's guilty plea, there is no reason to believe that life imprisonment, rather than death, would have been imposed by the court. Error, if any, was therefore harmless.

### IV.

■ That the trial court improperly instructed the jury on the defense of insanity is appellant's fourth assignment of error. The trial court instructed that the defendant is presumed to be sane until a reasonable doubt of his sanity is raised, but that if a reasonable doubt is raised by sufficient evidence, the State then must prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the crime. The appellant had requested that the jury instead be instructed only that the State has the burden to prove that the defendant was sane at the time of the

commission of the crime, with no reference to the initial presumption of sanity or overcoming the presumption.

Appellant supports this contention with the Oklahoma Uniform Jury Instruction-Criminal Number 730, which recommends the instruction appellant requested and is followed by a discussion of why the OUJI Commission did not prepare instructions informing the jury of the presumption of sanity or of the defendant's burden to come forward with evidence of insanity, even though instructions on both were routinely being given when the Commission developed the Uniform Jury Instructions. The Commission felt that whether the defendant sufficiently raised a doubt about his sanity was a question of law: if the trial court does not find a sufficient doubt is raised, the jury is given no insanity instruction, but if a sufficient doubt is raised, the jury is instructed only that the State has the burden to prove beyond a reasonable doubt the defendant's sanity. The Commission feared that instructing the jury on the defendant's initial burden would confuse the jury.

We disagree with the Commission that OUJI–CR 730 does not change the law. Whether the defendant has raised a defense of insanity is a mixed question of law and fact. If *any* evidence of insanity is raised, the judge must instruct the jury on the defense of insanity. *Johnson v. State,* 621 P.2d 1162 (Okl.Cr.1980). But unless the jury determines the defendant has presented evidence sufficient to raise a reasonable doubt as to his sanity at the time of the offense, the presumption of sanity prevails.

If a defendant presents some evidence of insanity but the trial court refuses to instruct on the defense because he or she deemed the evidence insufficient to rebut the presumption, reversible error would be committed. On the other hand, if the trial court gave the instruction, the error would be against the State, depriving it of a presumption it has a right to rely upon.

Simply put, whether any evidence has been presented is a question of law for the judge; whether enough evidence has been presented is a question of fact for the jury. We therefore find that OUJI–CR 730 standing alone is an incomplete, insufficient statement of law. The trial court did not err by refusing to give it.

Nor did the trial court err in restricting both the defense and the prosecution from explaining the burden of proof in this regard to the jury. The trial court is given broad discretion in ruling on the appropriateness of voir dire questions. *Nauni v. State,* 670 P.2d 126 (Okl.Cr.1983). The jury would only have become confused if the prosecutor and defense counsel had been allowed to continue their respective arguments on who has what burden of proof.

V.

The next assignment of error concerns the admission of certain photographs and slides. This Court ruled those same exhibits properly admissible when the case was originally appealed. *Brewer v. State,* 650 P.2d 54, 59–60 (Okl.Cr.1982). While this writer still thinks the sixteen by twenty photograph and the eight color slides were inadmissible for the reasons given in my dissent to that portion of the opinion, 650 P.2d at 64, it is a matter of stare decisis which the State and the trial court relied upon. In the interest of fundamental fairness, the Court's previous decision will not be reviewed.

VI.

The medical examiner testified that spermatoza was present in the victim's vaginal cavity, indicating recent intercourse, but that there were no injuries to the genitalia. The prosecutor asked the medical examiner whether there was any way he could determine "whether or not that individual, Karen Joyce Stapleton, had had intercourse before or after death?" Defense counsel object before the question could be answered, and a bench conference followed.

Defense counsel accused the prosecutor of asking a prejudicial question which he knew could not be answered, clearly an unprofessional tactic. The prosecutor admitted he knew the M.E. could not make such a determination but wanted it to go before the jury "so you don't leave it open to speculation."

We are mystified by the prosecutor's reasoning. Nevertheless, the objection was sustained and the jury admonished to disregard the question; thus, the error was cured. *See Stout v. State*, 693 P.2d 617 (Okl.Cr.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

### VII.

■ Appellant's seventh assignment of error alleges that admitting evidence of other crimes was error. The State introduced evidence to show that the appellant gained entrance to the victim's apartment not by being invited inside by the victim as he claimed in a statement to the police but by breaking into the adjacent vacant apartment (second degree burglary), passing through a common attic way, and coming in through the attic opening in the victim's apartment (first degree burglary). The State inferred that the act of sexual intercourse that appellant claimed was consensual was actually rape. The State also introduced evidence that after committing the murder, Brewer took the victim's automobile (larceny), her dog (larceny), and her purse and its contents (larceny).

We first observe that the State gave proper *Burks* notice of its intent to introduce the evidence and that the jury was given a limited-use instruction at the close of the evidence. *See Burks v. State*, 594 P.2d 771 (Okl.Cr.1979).

As a general rule evidence of other crimes is inadmissible. Each of these crimes, however, can be properly viewed as part of the entire transaction surrounding the homicide for which Brewer was on trial. There is a logical connection between the burglaries leading up to the murder, the rape occurring about the same time as the murder, and the larcenies after the

murder. In addition, the probative value of the crimes outweighed any prejudicial effect. Despite appellant's contentions, the evidence that the crimes were committed was clear and convincing. Admitting the evidence was not error. *See Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983); *Blackwell v. State*, 663 P.2d 12 (Okl.Cr.1983).

### VIII.

■ The appellant next complains that a mistrial should have been granted when a statement concerning the victim's sexual proclivities was admitted into evidence through the testimony of a police officer. The statement was allegedly made by the appellant to the police officer but was not disclosed to defense counsel before trial. No objection was made at the time the officer testified. Later an objection was made and sustained, and the court agreed to admonish the jury. Defense counsel asked the court not to admonish the jury and moved for a mistrial, which was refused.

Had the appellant made a timely objection the jury would not have heard the evidence. Had the appellant not rejected the court's offer to admonish the jury, the jury would have been instructed to disregard the evidence. By failing to object when the testimony was first elicited the appellant waived any error. *See Lavicky v. State*, 632 P.2d 1234 (Okl.Cr.1981).

### IX.

In his ninth assignment of error the appellant alleges that his arrest was unlawful and the fruits of the arrest should have been suppressed. This Court ruled in the appeal of the first trial that the arrest was lawful. 650 P.2d at 60. No new argument or authority is offered. We again hold that the arrest was supported by probable cause and was lawful.

### X.

■ Next the appellant argues the sentence should be modified because during voir dire the prosecutor told the jury that

the Court of Criminal Appeals has ruled that neither the prosecutor nor the trial court may define reasonable doubt. This statement, according to appellant, indirectly indicated to the jury that if a conviction resulted, the case would be reviewed by an appellate court; thus, an arbitrary factor was inserted into the jury's consideration of both guilt or innocence and punishment, and jurors may have voted for the death penalty knowing that if they were in error it would be corrected on appeal. We find this argument ridiculous. The remark was a proper and correct statement of Oklahoma law. *See Vaughn v. State,* 697 P.2d 963 (Okl.Cr.1985).

## XI.

■ Appellant also alleges it was error to inform the jury during voir dire that if the appellant was convicted, there would be a second stage of the proceeding at which the jury would hear additional evidence and then determine punishment. After an objection was interposed, the court allowed the prosecutor to tell jurors the proceeding was bifurcated but did not allow the prosecutor to mention again that additional evidence would be presented. Although the jury should not have been told that additional evidence would be presented, we do not think the one brief remark was so prejudicial as to require reversal or modification. *See* 20 O.S.1981, § 3001.1.

## XII.

■ In his twelfth assignment of error appellant complains the trial court improperly eliminated four mitigating circumstances from the jury's consideration by refusing to instruct the jury that Benjamin Brewer "is a living, breathing, human being"; that he "has a family which is concerned about his future and who are willing to stand by him and give him support"; that he "is not guilty of the crime of First Degree Murder by reason of insanity"; and that he "is guilty only of the crime of Manslaughter in the First Degree."

Three of the four alleged mitigating circumstances are not mitigating factors at all. Contrary to appellant's assertion, the trial court would have erred in giving the final two factors as the jury had already determined the appellant was sane and guilty of first degree murder. As for the fact that the appellant is a "living, breathing, human being," all persons on trial for first degree murder fall into this category; it does not mitigate the crime.

It is true that a defendant must be permitted to present any evidence in mitigation that may be relevant to sentencing in a capital case. *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). But in this case no evidence was presented that Brewer had a family that was concerned about his future, willing to stand by him and give him support. The trial court did not err in refusing to instruct the jury accordingly.

## XIII.

■ Appellant's thirteenth assignment of error claims the trial court erred in failing to appoint expert witnesses for purposes of the second stage proceedings. This Court has held that there is no right to State funds to hire experts to present mitigating factors on behalf of an accused charged with a capital crime. *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983).

In *Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, ——, 84 L.Ed.2d 53 (1985), the United States Supreme Court held that defendant Ake was entitled to the assistance of a psychiatrist on the issue of future dangerousness, an aggravating circumstance argued at the sentencing stage of the capital trial. That case, however, is distinguishable in that a psychiatrist testified for the State that Ake did pose a threat of continuing criminal violence. In the case at bar, the only psychiatrist who testified appeared on behalf of the appellant. Thus, the State did not have a strategic advantage over Brewer that would create a risk of error in the proceeding absent a defense witness to counter-balance the State's expert testimony. The trial court

did not err in refusing to appoint the requested experts.

### XIV.

The State sought to prove the appellant had been previously convicted of a crime involving the use or threat of violence to a person by introducing certified copies of a judgment and sentence for rape and the docket sheet regarding the case. Appellant stipulated that his prior conviction involved use or threat of violence but did not stipulate that he was represented by counsel. The fourteenth assignment of error alleges that the evidence presented failed to properly prove, as is required by case law, that appellant was in fact represented by counsel at the time of his prior conviction. *See Tucker v. State*, 499 P.2d 458 (Okl.Cr.1972).

■ Brewer's first argument is that the copy of the appearance docket was not adequately certified in that the copy consists of two pieces of paper taped together, with only the bottom page bearing the court clerk's seal. It is obvious, as the State suggests, that the single docket sheet was reproduced on two sheets of paper and taped together because the docket book was larger than the photocopying ability of the machine used to make the reproduction. The instrument certified was the entire page of the felony docket book, not the one sheet of paper that bore the seal.

■ Brewer's second argument is that the only indication on the docket sheet that he was represented by counsel is the upper right hand corner where the name "Dick Lock" is inserted under the label "Attorneys For Defendant", and that that alone is insufficient to prove he was represented by counsel. We cannot agree. The State introduced evidence that Brewer was represented by an attorney, and Brewer has never attempted to refute the evidence. We find the rape conviction was properly admitted. *See Collums v. State*, 654 P.2d 1070 (Okl.Cr.1982).

### XV.

■ The fifteenth assignment of error claims modification to life imprisonment is necessitated by improper comments made by the prosecuting attorneys. The first comment cited as error was actually an argument by defense counsel. The next four occurred during voir dire. Appellant claims the questions posed were designed to invoke sympathy for the victim. We disagree. Attorneys for both sides engaged in an effort to explain that the jury should not allow sympathy for the victim or for the appellant to serve as a basis of their verdict. None of the comments cited were improper or prejudicial.

■ Appellant argues that the prosecutor's characterization of the twenty-year old victim as "this little girl" and "this young girl" during cross-examination was also designed to invoke sympathy. Although "young woman" would have been a more accurate description of the victim, we do not find these two comments to be prejudicial. The jury, having viewed many pictures of the victim, and having heard that she had been married and divorced, knew the victim was not a little girl.

■ The next two comments complained of were made during closing argument. Both were met with objection. The first objection was sustained but an admonishment was refused. We do not think one was necessary. In the second comment, the prosecutor remarked that he, being a man, could not imagine how horrible it must be to be raped. We find this comment to be within the permissible range of closing argument, and that the objection was properly overruled.

■ Several comments made allegedly cast aspersions on defense counsel and/or castigated defense witness Dr. Gagliano, a psychiatrist. The first occurred when in cross-examination the prosecutor asked Dr. Gagliano if it was correct to say that he had provided defense counsel with a defense and that if he had not provided them with the defense of insanity that they would have had to think of something else.

The trial court sustained the objection and admonished the jury to disregard the statement; thus any error was cured. *See Williams v. State,* 702 P.2d 382 (Okl.Cr.1985).

 The remaining remarks were made during closing argument. One was a correct statement of law concerning expert testimony and was not improper. Others were fair inferences from Dr. Gagliano's testimony. One comment, however, was improper. When defense counsel was objecting to certain statements, the prosecutor said, "Let's defend old Dr. Gagliano. Let's defend him." This unprofessional outburst is similar to one made during Brewer's first trial that contributed to the need for a retrial. *Brewer,* 650 P.2d at 57–58. In the first trial, however, there were numerous errors that, taken together, demonstrated appellant's denial of a fair trial. This time appellant was given a fair, though imperfect, trial. Neither modification nor reversal is mandated by this single, uncured error.

Another remark made in closing argument is objected to for the first time on appeal. As it was brief and did not result in fundamental error, any error was waived. The final two comments complained of were met with timely objections, which were sustained, and followed by admonitions by the trial court for the jury to disregard the remarks. Both comments were improper, but they did not determine the verdict. The errors were cured by the admonition. *See Stout v. State,* 693 P.2d 617 (Okl.Cr.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

## XVI.

 The next assignment of error alleges the trial court erred in refusing to instruct the jury at the second stage that if they could not agree on a penalty within a reasonable time, the trial court would impose life imprisonment. This Court has considered this argument in the past and found it to be without merit. *See, e.g.,*

*Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985). Our stance has not since changed.

## XVII.

 Nor has our stance changed on appellant's argument that excluding jurors who are unequivocally opposed to the death penalty denies an accused of a fair and impartial cross-section of the community. *See Foster v. State,* 714 P.2d 1031 (Okl.Cr. 1986).

## XVIII.

 Appellant filed a supplemental brief claiming that a recent Tenth Circuit Court of Appeals case mandates reversal because the trial court did not instruct the jury *sua sponte* that the State had to prove beyond a reasonable doubt that he did not kill in the heat of passion. The case appellant relies on, *United States v. Lofton,* 776 F.2d 918 (10th Cir.1985), is distinguishable from the case at bar.

Defendant Lofton's affirmative defense to first degree murder was that she had killed her husband in the heat of passion or adequate provocation, which would constitute the lesser included offense of voluntary manslaughter. The instructions given did not advise the jury that this was Lofton's sole defense to murder. On the contrary, the jury was instructed to consider manslaughter only if it found Lofton not guilty of first degree murder.

In the case at bar the defense was insanity. The instruction on manslaughter was given as a lesser included offense, not as a defense to the charge of murder. We hold that under these circumstances the *Lofton* instruction is not required.

## XIX.

 Finally this Court must determine whether the evidence supports the aggravating circumstances found and whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. 21 O.S.Supp.1985, § 701.-13.[1]

---

1. Comparing appellant's sentence to similar crimes to determine whether the sentence of

■ We have already determined that the evidence supported a finding that Benjamin Brewer had been previously convicted of a felony involving the use or threat of violence to the person. Likewise we find that the record amply supports that the manner of death was especially heinous, atrocious, and cruel.

■ Appellant argues that the passage of time between the homicide and trial constituted an arbitrary factor, and that the large picture of the victim, the allegation that Brewer raped his victim, and improper closing argument and cross-examination of witnesses resulted in a verdict based on passion or prejudice. We have examined the record thoroughly and conclude that the death sentence was imposed not due to passion, prejudice, or any other arbitrary factor, but because of the overwhelming evidence of guilt and the nature of this gruesome crime.

The judgment and sentence is AFFIRMED.

BUSSEY, J., specially concurs.

PARKS, P.J., concurs in results.

BUSSEY, Judge, specially concurring:

Finding that the evidence overwhelmingly supports the judgment and sentence of death, and that the record is free of any error requiring modification or reversal, I concur.

death is excessive or disproportionate is no longer mandated by statute. *See* 1985 Okla. Sess.Laws, ch. 265, § 1. When first presented with the question of whether this statute should be applied retroactively, this author believed it should not. *See Green v. State,* 713 P.2d 1032 (Okl.Cr.1985). Upon reconsideration, I believe the change is procedural only and should be applied retroactively. *See Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986). Insofar as the *Green* opinion is inconsistent with *Foster,* it is hereby overruled.