Alvie James HALE, Jr., Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–208.

Court of Criminal Appeals of Oklahoma.

Jan. 29, 1988.

Rehearing Denied March 2, 1988.

As Corrected Feb. 25, 1988.

---

**OPINION**

BUSSEY, Judge:

Appellant, Alvie James Hale, Jr., was convicted in Pottawatomie County District Court of Murder in the First Degree and Kidnapping for Extortion, Case No. CRF-83-348. The death penalty was assessed for the murder conviction and life imprisonment was assessed for the kidnapping conviction.

The crimes of which appellant was charged were for the kidnapping and murder of William Jeffrey Perry of Tecumseh, Oklahoma. The victim, his sister, and his parents owned and managed a local bank. When he failed to arrive for work Tuesday morning, October 10, 1983, his sister went to his home to locate him. She found his automobile in the driveway, the front door to his home open, his clothes laid out for work and Jeff missing. The only sign of a struggle was an upset alarm clock. At 10:30 a.m. that day, Jeff's mother received the first of a series of telephone calls concerning her son from an unidentified man. The second call came at 1:30 p.m. and was received by Jeff's sister, Veronica, who was asked "where the money was, where the $350,000.00 was?" During each call, the family asked to speak with Jeff and were told that he was at a lake cabin but that he would be released after the caller received $350,000.00 from them. The family could not arrange to have the money until the following day.

At approximately 7:00 a.m. the morning of October 11, 1983, a man identified as appellant came to the bathroom window of the house where Janet Miller lived. He asked her if he could use a telephone and she told him there wasn't one. As the man went back to this white station wagon in her driveway, a second man dressed only in undershorts yelled for help from an adjacent field. Appellant hurried to the spot where the second man, who was bent over with pain, was located and pulled him over a fence into the automobile. Hale was convicted in federal court of the charge of

Elaine Meek, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., David E. Lee, Asst. Atty. Gen., Oklahoma City, for appellee.

Affecting Interstate Commerce by Extortion based upon his actions in this case.

The F.B.I. was called on Tuesday and traced the telephone calls made to the Perrys. They were also present on October 12 when Mrs. Perry placed the cash at the dropsite. Appellant arrived and picked up the money before Mrs. Perry could get back into her vehicle. The F.B.I. agents pursued appellant traveling at high speeds in Oklahoma City until his vehicle finally came to a stop after hitting a drainage ditch, went airborne and then finally stopped after an F.B.I. agent's vehicle collided head on with appellant's truck. All the money Mrs. Perry had delivered was found in the truck and appellant was taken into custody at that time.

Appellant made a statement to F.B.I. agents on October 12, 1983. He claimed that he had been hired by a man named Poe to pick up money owed Poe by the Perry's. He stated that he knew nothing of the disappearance of Jeff Perry.

Appellant's father gave law enforcement officers consent to search his home and property. Officers found there the victim's body wrapped in a dark colored trampoline tarp within a metal storage shed; one which fit a trampoline frame found at his own home. Jeff Perry had been shot a number of times. Also located there was a cream colored station wagon appellant had used the morning of October 11th. A blood stained towel was found in the vehicle which contained a hair identified as that of appellant. A .38 caliber revolver was found in a kitchen cabinet. There was a great deal of other physical evidence linking appellant to the offenses.

## I

■ Appellant moved for a change of venue prior to his trial based upon extensive adverse media coverage of his case. The trial court delayed ruling on the motion until after voir dire of the venire, at which time it was denied.

Appellant in assigning error notes that each of the jurors who sat on the petit jury had read or heard of his case in the media. Six admitted having formed opinions concerning the case. Some knew members of appellant's family, and some were acquainted with members of the victim's family.

Each of the jurors finally seated stated that he or she could set aside any opinion held and impartially judge the case on the evidence presented at trial. This is the standard of a fair jury trial. *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173.

> It is not required ... that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961).

Appellant cites *Irvin* and the reversal therein in support of his contention that his own conviction should be reversed. *Irvin,* however, is distinguishable from the case at bar. In *Irvin,* a jury panel of 430 individuals were called, of which the trial court excused 268 members on challenges for cause as having fixed opinions as to the guilt of the petitioner. The petitioner used all twenty of his peremptory challenges. In the case at bar, only thirty-seven prospective jurors were interviewed. Seven were excused for cause and eighteen were peremptorily challenged. The record reveals that every juror challenged for cause was excused by the trial judge. Defense counsel only requested that one prospective

juror be excused for cause, and that request was granted.

In *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), after reviewing cases which were reversed due to the press coverage, the Court summarized:

> The proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob. They cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process.

421 U.S. at 799, 95 S.Ct. at 2036. Although there was a great amount of pretrial publicity in *Murphy,* the Court held that the petitioner had failed to show that the setting of the trial was inherently prejudicial or that the jury selection process permitted an inference of actual prejudice. The Court contrasted the jury selection in *Irvin,* and noted that in the case before them twenty of seventy-eight persons questioned were excused because they indicated an opinion as to petitioner's guilt.

In the case at bar, where every juror challenged for cause was excused, it cannot be said that the appellant met his burden of showing that the trial court abused its discretion by failing to grant the change of venue. *Andrews v. State,* 555 P.2d 1079 (Okl.Cr.1976). This assignment is without merit.

## II

■ Appellant next contends that the trial court erred in not allowing individual sequestered voir dire of the veniremen. He argues that his voir dire of the potential jurors was unduly hampered since the court refused his motion.

Appellant points out several instances where individual voir dire would have facilitated a greater depth of inquiry. We note, however, his pretrial request was for individual questioning concerning the death penalty only, and he did not request it again during voir dire. Yet we find no abuse of discretion by the trial court in declining the pretrial motion. *Foster v. State,* 714 P.2d 1031 (Okl.Cr.), *cert. denied,* — U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986); *Irvin v. State,* 617 P.2d 588 (Okl.Cr. 1980).

## III

■ Appellant urges reversal due to error committed by the trial judge in refusing to grant trial counsel's Application to Withdraw from the case. Trial counsel asked to withdraw from representing Hale because he suspected appellant of attempting to burglarize his offices and thought that his personal animosity might hinder communications with Hale. The trial court held a hearing out of Hale's presence and declined the application. We find no abuse of the court's discretion in requiring counsel to overcome his personal feelings and to represent Hale. There is no constitutional right to an attorney client relationship free of animosity. *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). This issue was not properly preserved for review on appeal either because it was not raised in appellant's Petition in Error. This assignment must fail. *Chronister v. State,* 538 P.2d 215 (Okl.Cr.1975).

## IV

■ Appellant seeks reversal because of the improper introduction of evidence of other crimes. As he points out in his own brief, no objection was raised at trial. Failure to object to the introduction of other crimes evidence waives the error on appeal. *Thompson v. State,* 705 P.2d 188 (Okl.Cr. 1985); *Brogie v. State,* 695 P.2d 538 (Okl. Cr.1985). Fundamental error did not result, therefore, this assignment will not be considered.

## V

■ Appellant argues that he was deprived of his fundamental right to confront witnesses against him when a chart showing the times and locations of ransom calls

made to the extortion victim's home was admitted into evidence. He contends that the chart established his connection with the kidnapping because it contained notations showing, "Hale admits call." We hold that even if error occurred and such error had been properly preserved on appeal, it amounted at most to harmless error where oral testimony established the locations from which the calls were made. F.B.I. agents observed appellant making those calls, and regardless of anything else, appellant's connection with the kidnapping was established when he was observed at the scene where the money was picked up and was subsequently apprehended with all of the money in his possession. Authority that harmless error will not require reversal is manifold. See, e.g., Harrall v. State, 674 P.2d 581 (Okl.Cr. 1984). The assignment is without merit and must fail.

### VI

■ Appellant urges that prejudicial error occurred when the trial court refused to instruct on lesser included offenses. First, he urges that an instruction on extortion should have been given as a lesser included offense on the kidnapping charge. Although it is true that the evidence presented at trial could have supported a conviction for extortion, we hold that extortion is simply not a lesser included offense to the crime of Kidnapping for Extortion. To be a lesser included offense, all of a crime's essential elements must be contained within the crime charged. If it contains an element not required for conviction of the crime charged, it is not a lesser included offense. For conviction on a charge of extortion, the State must show that the defendant in fact *obtained goods* with consent by force or fear. There is no such requirement in kidnapping. The State in this case probably could have successfully prosecuted a charge of extortion had it attempted to do so, but it is not a lesser included offense.

■ Appellant also contends that the jury should have been instructed on manslaughter and second degree murder. A trial court should not instruct on a lesser included offense if the evidence will not reasonably support a conviction on the lesser included offense. *Funkhouser v. State,* 721 P.2d 423 (Okl.Cr.1986). The murder victim in this case died from gunshot wounds to the head fired from close range after being shot in the arm, leg, and abdomen. From the nature of the wounds and the surrounding circumstances, we do not believe that a rational juror could find from the evidence that the death was not the result of a premeditated design to effect death, and there was absolutely no evidence that the death arose from heat of passion. Since the evidence did not support convictions of second degree murder nor of manslaughter, it was not error for the judge to refuse instructions on them.

### VII

■ Appellant urges that reversal is required because identification of appellant by an unreliable witness was admitted into evidence. We do not concede that the testimony was unreliable, but even if it were, defense counsel impeached the witness' testimony, no objection to the identification was raised, and the identification issue was not raised in the Petition in Error. The issue was not preserved for appeal, *Carter v. State,* 698 P.2d 22 (Okl.Cr.1985), and will not be considered by this Court.

### VIII

Appellant claims that he was subjected to double jeopardy as a result of his federal conviction, and that the trial court improperly allowed the State to try him for both kidnapping and murder where the crimes arose from the same transaction. With regard to the federal conviction, appellant admits that retrial by the State would not be barred by any decisions of the United States Supreme Court. Rather, he relies upon the State Constitution at Article II, § 21, which states in pertinent part, "[no] person [shall] be twice put in jeopardy of life or liberty for the same offense."

■ Appellant points out that this Court recognizes and applies two distinct tests to determine whether there has been

a violation of a defendant's protection against double jeopardy. In *Johnson v. State*, 611 P.2d 1137 (Okl.Cr.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 955, 67 L.Ed.2d 120 (1981), we delineated these tests and discussed their proper applications. First, a "same transaction test" should be applied to determine whether the various crimes charged should be joined in a single trial. If the various charges arose from a single criminal episode, the defendant should be protected from having to defend himself in multiple prosecutions. Therefore, all charges arising from a single criminal episode should be joined in a single trial unless the defendant has in some manner waived his protection against double jeopardy. Appellant argues that since the federal charges against him arose from the same criminal episode as the State's charges, a second, separate trial by the State violated his rights. The argument is without merit. Although it has not been specifically included in the rule before, joinder of charges arising from the same criminal episode must be possible before a prosecutor can be required to join them. In this case, it was not. The State could not have brought its charges in the federal proceeding, nor could it have prosecuted the federal charges in the State proceeding. Where separate charges are brought by federal and State officials, we hold that the "same transaction test" has no application and appellant's protection against double jeopardy is not violated by virtue of the separate trials.

■ The second test addressed in *Johnson* is known as the "same evidence test." Appellant misconstrues the application of this test, which was set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932):

> Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not....

Appellant urges that he was exposed to double jeopardy on the State charges be-

cause some of the same evidence was used to convict him on each one. That does not, however, go to the question which is whether Kidnapping for Extortion and Murder in the First Degree each require "proof of *an additional fact* which the other does not." Clearly, the State is not required to prove death of a human for conviction on the kidnapping charge, nor to prove purposes of extortion on first degree murder. We find the double jeopardy arguments to be without merit.

IX

■ Appellant seeks reversal of his convictions claiming that his fundamental right to a fair trial was violated when the trial court improperly admitted five audio tapes of ransom calls without proper authentication. Generally, admission of evidence is a matter for the discretion of the trial judge, and absent a showing of abuse, the ruling will not be disturbed on appeal. *Cooper v. State*, 671 P.2d 1168 (Okl.Cr. 1983). Although in this case only one tape was identified as a recording of appellant's voice by someone familiar with his voice, all tapes were identified as accurate recordings of the calls made. Other evidence was introduced to show that the calls were made from specific locations and that appellant was the one who made the calls. Authentication by direct testimony identifying the voice as that of the defendant has long been recognized as valid, *Hurt v. State*, 303 P.2d 476 (Okl.Cr.1956), but is not necessarily the only valid method of authentication. In *Hammers v. State*, 337 P.2d 1097 (Okl.Cr.1959), this Court rejected the use of tapes where none of the parties present when the recording was made testified and there were no identifying marks on the tapes to show that they were in fact recordings of the alleged conversation. In holding that the tapes were insufficiently authenticated, we said:

> The proper procedure would have been to have the recording played in Green's presence.... Green would then have been in a position to identify the recording of the voices as taken from his wire recording.

In this case, the tapes were authenticated as ransom calls received at the Perry residence, the phone company identified the locations from which the calls were made, and witnesses identified appellant as the man making calls from those locations at those times. Thus, we find that, as in *Grimes v. State*, 365 P.2d 739 (Okl.Cr. 1961), the parties to the call were adequately authenticated and the weight of the tapes was a matter for the jury's determination.

Furthermore, even if the tapes themselves had not been properly authenticated, other evidence in the case was still overwhelming that we cannot view their admission as anything more than harmless error.

### X

Appellant urges that his conviction on the kidnapping charge was not proved beyond a reasonable doubt, and his conviction on that count must therefore be reversed. We find the contention without merit. When sufficiency of the evidence is used to attack a verdict, the test to be used is whether, after viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt each essential element of the crime charged. If a rational trier of fact could, then there will be no reversal for insufficiency of the evidence. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985). The essential elements of the crime of Kidnapping for Extortion are: 1) the unlawful, 2) forcible seizure and confinement, 3) of another, 4) with intent to extort money from any person. 21 O.S.1981, § 745(A); OUJI–CR 470. Appellant claims that there was no evidence that he forcibly seized or confined the victim in this case. There were no eyewitnesses to the abduction at the victim's residence, but it is well established that elements of a crime may be proved by circumstantial evidence. *Atterberry v. State*, 555 P.2d 1301 (Okl.Cr.1976). Evidence in this case included unusual circumstances where the victim didn't show up for work and was absent from his home without locking it or taking his shoes, keys, or

billfold. A witness testified that she saw appellant drag a man consistent with the victim's description into his car from a field. Blood was found in that field. The victim's body when found showed three nonfatal gunshot wounds. From these facts, a reasonable jury could have found beyond a reasonable doubt that appellant had forcibly seized and detained the victim. Therefore, this argument must fail.

### XI

The trial judge instructed the jury that Kidnapping for the Purpose of Extortion, 21 O.S.1981, § 745, was punishable by the death penalty, and no less than ten years' imprisonment. Appellant contends that although the jury only recommended a sentence of life imprisonment, this error was so prejudicial as to deny him his fundamental right to a fair trial.

We find that the portion of this statute allowing the penalty of death for the offense of Kidnapping for the Purpose of Extortion has been repealed by implication upon enactment of the current death penalty jurisprudence found at 21 O.S.1981, §§ 701.7 *et seq. Atchley v. State*, 473 P.2d 286 (Okl.Cr.1970). However, this precise issue has not previously been adjudicated by this Court and we cannot agree that the prosecutor's request for the death penalty for this offense, and the trial court's instructions to the jury of it was the result of wilful misconduct intended to deny appellant a fair trial. Since the jury in this case did not assess the death penalty for the extortion conviction, appellant has not demonstrated prejudice resulting from the improper instruction. *Bumper v. North Carolina*, 391 U.S. 543, 545, 88 S.Ct. 1788, 1789–90, 20 L.Ed.2d 797 (1968).

### XII

The State introduced at trial two color photographs depicting the victim's body outside the storage bin where it was found by law enforcement officers. Appellant contends they had no probative value because the cause of death was not disputed.

The photographs in question showed the gunshot wounds suffered by the victim. The nature and the extent of the victim's injuries is relevant subject matter in a homicide case. *Johnson v. State*, 675 P.2d 438 (Okl.Cr.1984). Photographs can aid a jury in understanding the medical examiner's and other witnesses' testimony concerning the victim's injuries. We disagree that the probative value of the photographs was outweighed by their prejudicial value.

### XIII

Appellant seeks reversal on the grounds that the trial court failed to make sufficient inquiry to determine whether the jurors selected were actually unbiased. Examination of veniremen is a matter of discretion for the trial judge.

The record reflects extensive questioning by the court eliciting potential biases, their source and determining whether those biases would impair the venireman's ability to fulfill his role as a juror. We cannot from this record conclude that the trial court abused its discretion in the examination of jurors for qualification. *See Manning v. State*, 630 P.2d 327 (Okl.Cr.1981). Nor do we find defense counsel's conduct during voir dire to be deficient. Challenges to veniremen are a matter of trial technique which should not be second guessed with the benefit of hindsight. *Stover v. State*, 674 P.2d 566 (Okl.Cr.1984). We find this assignment to be without merit.

### XIV

Appellant contends that the trial court erred in not excusing two jurors who indicated that they held preconceived opinions of Hale's guilt. One of these two also stated that she had discussed the case with a witness called by the State, Linda Miller McKenzie. Each of these jurors stated, however, that they could set aside their opinions and render a verdict on the evidence presented at trial. This is all that can be asked of a juror. *Frye v. State*, 606 P.2d 599 (Okl.Cr.1980). Neither juror was challenged for cause, and is not now subject to challenge. *Parsons v. State*, 603 P.2d 1144 (Okl.Cr.1979).

### XV

Appellant relies upon *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), for the proposition that imposition of separate punishments for his federal and State crimes violated his rights against double punishment. The proposition is clearly without merit because under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932), on which *Whalen* is based, the two crimes simply are not the same. The question is not whether the elements of Affecting Interstate Commerce by Extortion are "virtually identical" to those of Kidnapping for Extortion, as appellant contends. Rather, it is whether each offense requires proof of an element not contained in the other. There need not be an interstate nexus to prove Kidnapping for Extortion, nor is forcible seizure and detention necessary to prove the federal offense. Thus, the crimes are different.

### XVI

Appellant complains that reversible error occurred when the State filed an Amended Bill of Particulars immediately prior to trial. We find the assignment frivolous. Even *Gholson v. Estelle*, 675 F.2d 734 (5th Cir.1982), relied upon by appellant, shows that reversal was required in that case due to surprise to the defense, not the procedure allowing late amendment. In this case, the Amended Bill of Particulars added as an aggravating circumstance that the crimes were committed to avoid arrest. Appellant was already aware of all of the evidence to be used by the State to prove it. After the Amended Bill was filed, defense counsel announced that he was ready. The defense was not surprised, and it so indicated. There was no error, and even if there had been, it was waived. *See West v. State*, 617 P.2d 1362 (Okl.Cr.1980).

### XVII

In his next assignment of error, appellant contends that the judge should have instructed the jury that if it failed to arrive at a unanimous decision on the sen-

tence, it would be discharged and a sentence of life would be imposed by the court. Two days after appellant filed his brief, *Brogie v. State*, 695 P.2d 538 (Okl.Cr.1985), was handed down by this Court. It addresses this issue squarely, and we find the assignment to be without merit.

## XVIII

■ Appellant urges that reversible or modifiable error occurred when the prosecutor commented on the absence of mitigating evidence in the second stage of trial. No objection was raised, and therefore, the issue was not preserved for appeal. *Crisp v. State*, 667 P.2d 472 (Okl.Cr.1983). We also find that the remark did not amount to fundamental error. *See Parks v. State*, 651 P.2d 686 (Okl.Cr.1982). The distinction between the comment in this case and the one in *Parks* is only a matter of semantics, and we find this assignment to be without merit.

## XIX

Appellant seeks reversal on the ground of ineffective assistance of counsel. Many of the arguments offered in support of this assignment have already been discussed as independent bases for reversal and will not be readdressed in this context. Several other arguments concern counsel's failure to object to evidence, instructions, and conduct of the prosecutor. The remaining arguments may be classified as defense counsel's preparation for and presentation of the case at trial.

■ Before this Court can reverse on grounds of ineffective assistance of counsel, the appellant must show: 1) that counsel's performance was deficient; and, 2) that the deficiency prejudiced appellant's case. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's deficient performance, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We find

counsel's performance adequate under the tests set forth in *Strickland.*

In some cases, counsel's failure to object may rise to the level of ineffective assistance of counsel, *Aycox v. State*, 702 P.2d 1057 (Okl.Cr.1985), but often such a failure will not be conclusive. *See Roberts v. State*, 568 P.2d 336 (Okl.Cr.1977). In this case, appellant claims that objections should have been raised concerning the introduction of other crimes evidence, the use of an aggravating circumstance filed just before trial, the incorporation of the State's first stage evidence in the second stage, the conduct of the prosecutor during closing arguments, and the instructions given by the trial court. We find that the other crimes evidence which consisted of a possible attempted kidnapping and an assault on a prison cellmate who gave testimony on behalf of the State was admissible to show common scheme and identity. As the evidence was properly admissible, we find that there was no deficiency in failing to raise an objection to it.

The statute concerning the use of aggravating circumstances, 21 O.S.1981, § 701.10, states that "[o]nly such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." In *Brewer v. State*, 650 P.2d 54 (Okl.Cr.1982), this Court held that where the evidence in aggravation was timely made known and the defendant was not surprised by it, the trial court properly allowed its use. In a subsequent appeal in that case, J. Brett clearly implied that the State is acting within the confines of 21 O.S.1981, § 701.10 so long as notice is given to the defendant prior to commencement of the trial.[1] In this case, there is no dispute as to whether notice of the aggravating circumstance was given prior to commencement of the trial. Therefore, it was properly admissible and counsel's failure to object did not demonstrate deficient performance.

Appellant does not refer to any first stage evidence to which defense counsel

---

1. "But when a defendant pleads guilty or nolo contendere to First Degree Murder, there is no commencement of a trial to mark the deadline *for notice by the State." Brewer v. State*, 718 P.2d 354, 360 (Okl.Cr.1986). (Emphasis added.)

should have raised an objection. Even if we were to concede that failure to object is per se deficient performance, appellant has wholly failed to show how the deficiency prejudiced him. This showing is his affirmative obligation under *Strickland*, supra. Having failed to make any showing, the argument is without merit.

The prosecutor's conduct to which appellant claims an objection should have been raised involves a statement that appellant had presented no mitigating evidence at trial. We do not find the remark improper. In *Parks v. State*, 651 P.2d 686 (Okl.Cr. 1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983), relied upon by appellant, the prosecutor's remark improperly weighed the aggravating circumstances against the mitigating circumstances, thus arguably invading the province of the jury. We noted that no objection had been raised and did not address the propriety of the remark except to say that it was not fundamentally prejudicial. In this case, the remark did not go to the weight of the circumstances and amounted to nothing more than fair comment on the evidence in light of the instructions given. Therefore, counsel's failure to object did not demonstrate deficient performance.

Appellant asserts that counsel's performance was deficient because he failed to record the hearing on his Application to Withdraw as Counsel. "Failure to have portions of a trial recorded may be a mistake, but it is not incompetence." *Frederick v. State*, 667 P.2d 988, 991 (Okl.Cr. 1983). In this case, the unrecorded hearing was not even a part of the trial, and appellant fails to suggest how this mistake could have possibly resulted in prejudice to his case under *Strickland.*

Appellant urges that counsel did not present an adequate defense in either the first or second stage. He points out that nine State's witnesses were not cross-examined, and states that the cross-examination of the others was merely perfunctory. We note that the State called twenty-three witnesses to the stand. Those who were not cross-examined testified primarily about the discovery of evidence and its chain of custody, or were F.B.I. agents whose credibility before the jury and whose experience as State's witnesses was great. In cross-examining the other witnesses, counsel brought out that there was no real evidence of a struggle at the victim's home, that the eye witnesses' descriptions of appellant were inconsistent, that the tarp in which the victim's body was found might have come from anywhere, and that blood and hair found in appellant's station wagon may not have come from the victim. He did a thorough job of impeaching witnesses' testimony, argued for much of it to be stricken from the record, and prevented the admission into evidence of several photographs offered by the State. Appellant does not say what might have been accomplished by a more lengthy cross-examination. We cannot find counsel's performance deficient.

Appellant claims that counsel failed to use available evidence which was essential to the defense, relying on *Smith v. State*, 650 P.2d 904 (Okl.Cr.1982). We find the assertion wholly without merit. In *Smith*, the defendant pleaded insanity to a charge of first degree murder. Counsel failed to make inquiry of a psychiatrist concerning the defendant's sanity at the time of the conduct giving rise to the charges, even though that psychiatrist had rendered an opinion that the defendant was not competent to stand trial, and even though the defendant had been under the psychiatrist's observation shortly after the deaths occurred. We held *sua sponte* that the defendant had received ineffective assistance of counsel, and remanded her case for a new trial.

In the present case, defense counsel had in his possession evidence which might have implicated the participation of others in the crime, but it would not have relieved appellant of criminal liability for his own participation in the crimes. Whether certain evidence should be used at trial is a matter of trial tactics, and generally will not be second guessed by this Court on appeal. *Smith v. State*, supra. Appellant "has not met his burden of showing that the decision reached would reasonably likely have been different absent the asserted

errors." *Anderson v. State,* 719 P.2d 1282, 1284 (Okl.Cr.1986), citing *Strickland,* supra.

Appellant also claims that counsel admitted his client's guilt during first stage closing arguments.[2] We have held that conciliatory remarks of counsel may show ineffective assistance, *Collis v. State,* 685 P.2d 975 (Okl.Cr.1984), but we find nothing prejudicial in counsel's statement. Claiming that the appellant had not been involved at all would have completely destroyed counsel's credibility before the jury in light of overwhelming evidence of appellant's identity and testimony that appellant was apprehended with the ransom money after a chase by law enforcement officials. From the record, it appears that minimizing appellant's role was the only possible method of gaining an acquittal on either charge.

Appellant contends that trial counsel failed to inform himself that the crime of kidnapping is not a capital offense. We have dealt with the state of the law concerning kidnapping in assignment XI, and note that counsel's performance was not deficient for the reasons stated therein.

Finally, appellant claims that counsel's performance was deficient in failing to present mitigating evidence and in admitting one of the aggravating circumstances in the second stage of trial. With regard to counsel's failure to call witnesses during the sentencing stage, we refer again to *Smith v. State,* 650 P.2d 904 (Okl.Cr.1982) wherein this Court held that after an attorney has determined what a witness' testimony will be, it is a question of trial tactics as to which, if any, witnesses will be used. Generally, this Court will not second guess the attorney's judgment, and specifically, we will not in this case.

The alleged concession of an aggravating circumstance was no concession at all. Counsel simply requested life imprisonment rather than death in case the jury did in fact find an aggravating circumstance. *Stafford v. State,* 669 P.2d 285 (Okl.Cr. 1983), appears to be applicable to the present case:

Although the argument may not have been the model closing argument, we cannot judge it by its lack of success.... It is to be remembered that trial counsel had the unenviable task of defending a man against whom the State had amassed a great deal of evidence.

*Id.* at 296.

Having reviewed and considered the record as a whole, we cannot find that appellant was denied his Sixth Amendment right to effective assistance of counsel.

### XX

In his next assignment of error, appellant requests this Court to conduct a proportionality review and urges that his sentence of death is disproportionate to that of others who have committed similar offenses. We note that the proportionality review previously required by our death penalty statutes is no longer required, and no longer made. 21 O.S.1986 Supp., § 701.13; *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 249, 93 L.Ed.2d 173. For the reasons discussed in our statutory review at proposition XXIII, however, we find the sentence of death appropriate under the facts of this case and the laws authorizing its imposition.

### XXI

Appellant contends that this Court's application of the aggravating circumstance that a murder is "especially heinous, atrocious, or cruel," has been overbroad and unconstitutional. 21 O.S.1981, § 701.12. This is one of two aggravating circumstances found to be present by the jury in appellant's case. We recently addressed this exact issue in *Stouffer v. State,* 742 P.2d 562 (Okl.Cr.1987) (Opinion on Rehearing). We held that the application of this aggravating circumstance should be limited to those murders in which the death is preceded by torture or serious physical abuse.

---

**2.** In closing argument, defense counsel stated, "There isn't any doubt that Jim Hale was involved in this. No doubt whatsoever. How much though? To what extent?

Upon our review of the record below, the jury in Hale's case was properly instructed of this construction; they were instructed according to the uniform jury instructions (OUJI–Cr 436).

Moreover, the evidence sufficiently supports their finding. Perry received at least five gunshot wounds. The two to his head were fatal. He also was wounded in the abdomen, right leg and right arm. The wound to the abdomen perforated the small intestine four times and was also potentially fatal. At approximately 7:00 a.m. on the day of the first extortion calls, he was seen bent over holding his side and bleeding in a field and calling for help. This was near the home of Janet Miller McKenzie where appellant had stopped and asked to use a telephone. When appellant heard Perry, he returned to him and pulled him over the fence and into his vehicle. The testimony of Janet Miller McKenzie was corroborated by the finding of blood in the location where she saw the victim of a type consistent with Perry's blood.

This evidence is consistent with a finding that Perry suffered serious physical abuse prior to his death. He was conscious and suffering for a period of time before he died. Although the length of time which Perry suffered is not certain, the injuries were of a serious and painful nature.

## XXII

■ Appellant's final challenge is to the constitutional sufficiency of our death penalty statutes. He contends that Oklahoma statutory scheme does not provide particularized guidance to the jury in considering mitigating circumstances. We have addressed this issue in several cases and have maintained that our statutes adequately focus the jury's attention on particular mitigating factors. *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985), *cert. denied,* 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986); *Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985). We are unpersuaded by appellant's arguments that this position is incorrect. Appellant's jury was given instructions previously approved concerning consideration of aggravating and mitigating factors and were acceptable.

## XXIII

■ Pursuant to 21 O.S.Supp.1986, § 701.13(C), we have reviewed the record and verdicts herein and have determined that the sentence of death was not imposed under the influence or passion, prejudice, or any other arbitrary factor. We also find that the evidence supports the jury's finding of the two aggravating circumstances:

1) The murder was especially heinous, atrocious, or cruel; and,

2) The murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution.

In support of the latter finding, we note that there was evidence that the victim and his family knew or were familiar with appellant.

Finding no error warranting reversal or modification, judgments and sentences are AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., dissents.

PARKS, Judge, dissenting:

I respectfully disagree with the majority's treatment of the appellant's first assignment of error, concerning the trial court's denial of his request for a change of venue. Appellant was tried and convicted of First Degree Murder and Kidnapping for Extortion and sentenced respectively to death and life imprisonment, in connection with the abduction of William Jeffry Perry, a Tecumseh bank official. Appellant's arrest, subsequent F.B.I. and police investigation, and court proceedings, garnered extensive press coverage in the Oklahoma County-Pottawatomie County area, in part because Perry was a member of a prominent banking family in Tecumseh.

The record reflects that a petition for a change of venue was filed on February 22, 1984, and met the requirements of 22 O.S. 1981, § 561. The original record contains a petition and two affidavits, and a third affidavit was presented at the hearing on the petition. Neither the prosecutor at tri-

al, nor the Attorney General on appeal, claim that the procedural requirements of Section 561 were not fulfilled. At the hearing on February 24, 1984, two of the affiants were called to testify. Don Ferrell testified that he had been a resident of Shawnee, in Pottawatomie County for ten (10) years, and that "just about" everyone he knew felt appellant was guilty because "that many other people couldn't be wrong." Mr. Ferrell was related to, or an acquaintance of, the appellant. Appellant's uncle, Clarence Hale, testified many persons had told him they believed his nephew was guilty. Defense counsel submitted twenty-six (26) newspaper articles concerning the case, which were taken from the "Daily Oklahoman" in Oklahoma City, and the "News–Star" in Shawnee. The State offered no counter-affidavits or testimony. The trial judge took the petition under advisement until after *voir dire*, at which time it was overruled. Testimony of those veniremen actually selected to serve on the jury revealed that all twelve had knowledge about the case, six had formed an opinion regarding appellant's guilt, two either personally knew the appellant or a member of his family, and three either knew the victim or his family.

Appellant's claim rests upon the Due Process Clause of the Fourteenth Amendment which requires, as a standard of fairness, that an accused have "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). This requirement of indifference does not mandate that jurors "be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed. 2d 589 (1975). However, "the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" *Id.* Moreover, in reviewing a due process claim of this nature, appellate courts "must make their own evaluations of the circumstances and not defer unduly to the discretion of the trial judge." *Scott v. State*, 448 P.2d 272, 275 (Okla.Crim.App.1968).

An appellant may demonstrate a due process violation under one of two standards: First, prejudice is presumed if the facts reveal "the influence of the news media, either in the community at large or the courtroom itself, pervaded the proceedings" and that the "trial atmosphere [was] ... utterly corrupted by press coverage." *Murphy v. Florida, supra,* at 798–99, 95 S.Ct. at 2035. The key to this standard appears to be the "solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob." *Id.* at 799, 95 S.Ct. at 2036. Second, if the circumstances are not so egregious to raise this presumption, the so-called "totality of circumstances" will be examined by the reviewing court to discern whether the trial was "fundamentally fair." *Id.* at 799, 95 S.Ct. at 2036. Appellate review of the circumstances surrounding the trial should focus on the *voir dire* statements of the individual jurors actually selected to serve, *voir dire* statistics, and the community atmosphere as reflected in the news media. *Id.* at 800–08, 95 S.Ct. at 2036–38. *Accord Walker v. State*, 723 P.2d 273, 278 (Okla. Crim.App.1986).

Appellant does not argue, and I do not find, that the proceedings were entirely devoid of the solemnity and sobriety to which a defendant is entitled under the first test of *Murphy, supra.* Therefore, I cannot "presume" that appellant was deprived of due process, as was found in the egregious media coverage situations which developed in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), and *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). However, from my reading of the record, the appellant has sufficiently demonstrated a reasonable possibility of existing prejudice to establish that he was deprived of "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). The State claims that "[p]ersons with preconceived

opinions for or against the defendant, or who had any question as to their ability to be impartial, were excused." *Brief of Appellee*, at 16. Unfortunately, the record does not support the State's interpretation of the facts.

The *voir dire* testimony in this case reveals that each of the jurors eventually seated had knowledge of the case, either through news accounts or conversations with other community members. One of the jurors, a hairstylist, testified she overheard a conversation in her shop in which a State's witness discussed the case. A second juror was a photojournalist with the Shawnee "News–Star" and had, by his own admission, "assisted in news coverage of the case." In *Scott v. State*, 448 P.2d 272 (Okla.Crim.App.1968), this Court reversed a manslaughter conviction, based partly on the trial court's failure to grant a change of venue. Judge Brett, writing for the Court, noted:

> The record reflects that all members of the jury had read something about the case in the newspaper. Admittedly, each stated his opinion was not fixed, and that he could reach a decision based on the evidence. But where a reasonable possibility of prejudice is shown to exist, concerning wide-spread pre-trial publicity, and its possible effect on the jury panel is shown to exist, then discretion seems to dictate a change of venue.

*Id.* at 274.

Aside from mere knowledge, two of the jurors in this case were acquainted with the appellant or his family, and three knew either the victim or his relatives. One juror commented that he had played golf with the appellant; however, he also knew "all of the Perrys" and "did a significant amount of business with them." Another juror, the photojournalist, knew several of the police officers and the District Attorney. Although not actually seated on the jury, one potential juror had dated the victim, and another testified to his "great sympathy" for the Perrys, with whom he was acquainted. Our statement in *Scott*, that "[i]n this case personalities were of such nature which, coupled with possible preconceived opinions imposed by the press, prejudice could have been easily caused against this defendant", *id.*, seems applicable here.

Of greatest concern in my review of the *voir dire* testimony is that six of the twelve jurors admitted holding pretrial opinions regarding the issue of appellant's guilt. Admittedly, as in *Scott, supra*, most with an opinion stated that it could be set aside and would not affect their deliberations; yet, one of these jurors candidly stated that he "didn't know" if he could decide the case impartially, since he had "heard so much about the case...." (Tr. I, at 45–47) Another juror testified that she had an opinion about the guilt or innocence of the defendant from news media reports, but "[n]ot one that couldn't be swayed." (Tr. I, at 131) The situation herein is not entirely unlike that in *Irvin v. Dowd, supra*, in which the United States Supreme Court reversed a conviction due to possible juror prejudice engendered by pretrial publicity. In *Irvin*, eight of the twelve jurors had formed an opinion regarding the defendant's guilt prior to trial, and some went "so far as to say that it would take evidence to overcome their belief." *Id.* at 728, 81 S.Ct. at 1645.

The newspaper articles submitted to the trial court also reveal extensive pre-trial publicity in the Pottawatomie County area. The community atmosphere is reflected in the following statements taken from newspaper clippings: "Disbelief hung over [the] town Thursday as news spread about Perry's abduction and shooting death." "Merchants up and down Tecumseh's main street shook their heads and grieved for the loss." "Perry's family is well known throughout the town. His father, William A. Perry, is president and board chairman of Farmers and Merchants Bank. Joan Perry, his mother, is the bank's vice-president." "News of the death of Jeff Perry spread from friend to friend. All the residents could do was pray, stay indoors and trade childhood stories [about Jeff]."

The articles also revealed details of the appellant's background, including a reference to his three prior felony convictions,

and twelve lawsuits which had been filed against him over the past twelve years. The articles noted that appellant did not testify on his own behalf in federal court where he was charged wtih extortion stemming from the incident. The articles further publicized the testimony of his cellmate, and revealed that appellant's trial counsel attempted to withdraw from the State court case. Apparently, several of the stories were featured prominently on the front page of the Shawnee "News–Star," the Pottawatomie County community newspaper. When the appellant was convicted in federal court, a large, full-page width headline proclaimed, *"Hale found guilty of extortion."* The article also reported that Federal District Judge Lee West commented following the non-jury trial that it was with "little or no difficulty that this court finds the defendant guilty."

Finally, the record reflects that thirty-seven potential jurors were examined in *voir dire* proceedings. Thirty-four admitted knowledge about the case, twelve stated they had formed an opinion about the appellant's guilt, four knew either the appellant or his family, and eight were acquainted with Mr. Perry or his family. Three potential jurors were removed for cause by the trial court for bias.

Our system of justice rests firmly upon the maxim that an accused is presumed innocent until proven guilty. Justice Frankfurter summed it up best in his concurring opinion in *Irvin v. Dowd,* 366 U.S. 717, 728, 81 S.Ct. 1639, 1646, 6 L.Ed.2d 751 (1961):

> [N]ot the least significant test of the quality of a civilization is its treatment of those charged with crime, particularly with offenses which arouse the passions of a community. One of the rightful boasts of Western civilization is that the State has the burden of establishing guilt solely on the basis of evidence produced in court and under circumstances assuring an accused all the safeguards of a fair procedure. These rudimentary conditions for determining guilt are inevitably wanting if the jury which is to sit in judgment on a fellow human being comes to its task with its mind ineradicably poisoned against him. How can fallible men and women reach a distinterested verdict based exclusively on what they heard in court when, before they entered the jury box, their minds were saturated with press and radio for months preceding by matter designed to establish the guilt of the accused. A conviction so secured obviously constitutes a denial of due process of law in its most rudimentary conception.

Therefore, an "impartial jury" is one that can be reasonably expected to abide by the presumption of innocence and to base a verdict on the evidence presented in court, and not on private speculation or media coverage. For the foregoing reasons, under the circumstances surrounding this case, I find that appellant was deprived of his fundamental right to be tried by an "impartial jury" as mandated by the Due Process Clause of the Fourteenth Amendment and Article II, § 20 of the Oklahoma Constitution. I would reverse and remand this case for a new trial. Accordingly, I dissent.